## PEARCE *v.* RICE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 51. Argued October 26, 27, 1891. — Decided December 7, 1891.

F. owed H. & Co. on account about $22,000. He settled this in part by a cash payment, and in part by a transfer of promissory notes payable to himself, the payment of two of which, for $5000 each, was guaranteed by him in writing. H. & Co. transferred these notes to a bank as collateral to their own note for about $13,000. They then became insolvent, and assigned all their estate to P. as assignee for distribution among their creditors. The bank sued F. on his guaranty. He set up in defence that his indebtedness to H. & Co. grew out of dealings in options in grain and other commodities, to be settled on the basis of "differences," and that it was invalidated by the statutes of Illinois, where the transactions took place. The court held that he could not maintain this statutory defence as against a *bona fide* holder of the guaranteed notes, and gave judgment against him. Execution on this judgment being returned unsatisfied, a bill was filed on behalf of the bank to obtain a discovery of his property and the appointment of a receiver, to which F., and the maker of the notes, and R., with others, were made defendants. P., the assignee of H. & Co., was, on his own application, subsequently made a defendant. An injunction issued, restraining each of the defendants from disposing of any notes in his possession due to F. Subsequently to these proceedings F. assigned to R. the two notes which H. & Co. had transferred to the bank. P., as assignee of H. & Co., filed a cross-bill in the equity suit, showing that the judgment in favor of the bank was in excess of the balance due the bank by H. & Co. R. filed an answer and a cross-bill in that suit, setting up his claim to the said notes, and maintaining that the judgment in favor of the bank was invalid, as being in conflict with the statutes of Illinois. *Held,*

(1) That the liability of F. upon the guaranty was, as between the bank and him, fixed by the judgment in the action at law;

(2) That all the bank could equitably claim in this suit was the amount actually due it from H. & Co., which was considerably less than the amount of the face of the notes;

(3) That the transfer and guaranty of the notes to H. & Co. were void under the Illinois statutes, and passed no title to them or their assignee;

(4) That R. was the equitable owner of the notes, and was entitled to receive them on payment to the bank of the amount of the indebtedness of H. & Co. to it;

(5) That the assignment to R., having been made in good faith and for a valuable consideration, he was a person interested in the object to be attained by the proceedings within the intent of the statute.

When, by filing a replication to a plea in equity issue is taken upon the plea, the facts, if proven, will avail the defendant only so far as in law and equity they ought to avail him.

*Hughes* v. *Blake*, 6 Wheat. 453, explained and distinguished from this case.

THE case was stated by the court as follows:

This case involves the conflicting claims of the appellant and the appellee to the balance due upon a judgment in favor of Huntington W. Jackson, receiver of the Third National Bank of Chicago, and to two promissory notes in his or its hands.

The history of that judgment, and the circumstances under which the bank got possession of the notes are as follows:

Hooker & Co., June 29, 1876, rendered to Ira Foote an account for $22,165.72, which the latter settled in part by delivering to that firm four notes, of $5000 each, executed to him by the trustees of the estate of Ira Couch deceased. The balance, $2165.72, was paid at the time in cash through James H. Rice. Upon each of two of the Couch notes due respectively on the first days of July and October, 1877 — the ones here in dispute — was the following endorsement: "I hereby guarantee the payment of the within note for value received at maturity. Ira Foote, by J. H. Rice, attorney in fact."

On the 30th of December, 1876, Hooker & Co. made their note to the Third National Bank of Chicago for $13,912.97, payable ninety days after date, with interest at the rate of ten per cent per annum, and, as collateral security for its payment, deposited several promissory notes with the bank, including the above two notes guaranteed by Foote.

For the purpose of making a distribution of their estate among creditors, that firm executed, February 28, 1877, an

assignment to J. Irving Pearce of all their property of every kind.

The bank, by its receiver, brought suit against Foote, April 26, 1878, in the court below, upon the above guaranty of the two Couch notes. He pleaded that he did not promise in manner and form as alleged; also, that the promises alleged had no other consideration than the buying and selling by Hooker & Co. for him upon the Chicago Board of Trade deals and options in grain, wheat, lard, pork and other commodities, wherein neither party had or was to deliver or receive any articles so bought or sold, and which transactions were to be settled entirely upon the basis of "differences." He pleaded, in addition, a set-off for money lent and advanced, money paid, laid out and expended, etc. The issues were found for the bank, and judgment was rendered against him for the sum of $14,635.55. In that case, the court said that while Foote may have contemplated dealing wholly in "differences" to such an extent as would make the transactions, under the decisions of the courts of Illinois, wager or gambling contracts at common law, he did not, according to the evidence, intend that his brokers should make for him such contracts — options to buy or sell at a future time property that was not to be delivered — as were expressly made illegal by the Illinois statutes. It was said among other things: "The defendant having delivered these notes with his guaranty upon them to Hooker & Co. in settlement of their demand against him, even though their demand was tainted as a gambling claim at common law, he cannot be allowed to set up the illegality of the dealings between himself and Hooker & Co. as a defence to these guarantees in the hands of a *bona fide* holder. He has put this paper, with his guaranty affixed to it, afloat upon the market. Unless a clear case of violation of the statute is made out, and the burden of making such a case is upon the defendant, this guaranty in the hands of a *bona fide* holder for value is valid, and not tainted by any of the defences between the original parties." *Jackson* v. *Foote*, 11 Bissell, 223; *S. C.* 12 Fed. Rep. 37, 41.

Execution against Foote having been returned no property

found, the bank, to obtain satisfaction of its judgment, brought the present suit, September 21, 1882, to obtain a discovery of his property and effects, and the appointment of a receiver. To this suit Foote, Rice, the trustees of Couch's estate, and others were made defendants. An injunction was issued restraining the defendants from selling, assigning, negotiating, receiving, collecting, or in any manner disposing of, any debts, bonds or notes due Foote, whether in his possession, or held by other persons in trust for his use or benefit. A receiver having been appointed, Foote was directed, by an order of court, to execute and deliver a general assignment of all his property and effects. This was done by him November 1, 1882. Pearce was made a defendant, on his own petition, and with leave of the court filed a cross-bill showing, among other things, that the judgment of the bank against Foote was largely in excess of the balance really due it from Hooker and Co., and claiming that he, as assignee of that firm, was entitled not only to the above two notes but to such balance as might be realized on that judgment after paying the amount due from his assignors to the bank.

Rice filed an answer and cross-bill asserting his ownership of the two Couch notes by assignment from Foote. That assignment was made February 16, 1885, and is in these words: "For value received I hereby sell, assign, transfer and set over unto James H. Rice, of Chicago, Illinois, all my right, title, interest, claim and demand in and under two (2) certain notes executed by the trustees of Ira Couch's estate to my order, each of said notes being for the sum of five thousand dollars ($5000.00), and are dated the first day of July, 1876, and are now in the hands of Huntington W. Jackson, receiver of the Third National Bank of Chicago, said notes being held by said Jackson, receiver as aforesaid, as collateral security for a certain indebtedness due said Third National Bank from S. G. Hooker & Co. I hereby give said Rice full power and authority to prosecute, in my name or his own, any and all suits touching said notes in any manner that he may deem best." The principal consideration for this assignment was the taking care of Foote by Rice. The evi-

dence of Rice on this point is uncontradicted. He testified: "I have spent a good deal of money on him, taking care of him. He had no money of his own, except what I let him have. He has been an invalid and had to have somebody to look after, him and have somebody to attend to him. . . . I had paid out money for Mr. Foote. He had got suits on his hands that he had to carry out, and I had become responsible for some of his fees, attorney's fees, and, in fact, had advanced him money to carry on his cases. It had gone so far that I didn't care about taking a great many chances more, and he assigned that [the two Couch notes] to me. . . . There are a good many other considerations besides the advancement of money that Mr. Foote is indebted for; he has made his home with me; been provided with nurses and doctors and taken good care of. Outside of the friendship I have for Mr. Foote there would be no money consideration for what I have gone through with." Again : "Mr. Foote has made his home with me for. nine years. He has been very feeble, especially for the past two years. He is in his sixty-eighth year. He has had to travel for his health, and has been away both winter and summer. He has had no money within the last five years, except what I have furnished him; no nurses or doctors except what I have paid for since he has been sick."

Rice's answer and cross-bill proceed upon the ground that the original transaction between Hooker & Co. and Foote was based upon a mere wager or bet upon the price of grain or provisions, constituting an option contract prohibited and declared void by the statutes of Illinois; and, therefore, that the consideration of Foote's guaranty upon the two notes failed, no title to them passing to Hooker & Co. The relief asked by him was, that the judgment rendered in favor of the bank against Foote be vacated and set aside; that if for any reason that could not be done, then that the judgment be set aside upon the payment to the bank of any balance due from Hooker & Co., which payment he offered to make upon the surrender of the above notes to him; and that the bank be ordered to return the notes to him. He asked such other relief as equity required.

Foote adopted the answers of Rice to the original and cross-bills of Pearce as his own. The bank and Pearce each relied upon the judgment against Foote in bar of the claim asserted by Rice. They denied that the original transactions between Foote and Hooker & Co. were in violation of law, or that Rice was a *bona fide* owner for value of the Couch notes.

Upon final hearing it was adjudged that the bank was entitled to be paid upon its judgment against Foote the balance due on the note of Hooker & Co., after crediting all payments thereon, including one by Pearce as assignee of Hooker & Co. The cross-bill of Pearce was dismissed for want of equity.

In respect to the claim of Rice, it was adjudged that he was the equitable owner of the two notes in question; that, they having been transferred by Foote to Hooker & Co. for a gambling consideration, the transfer was void as between those parties; that upon payment by Rice to the bank of the amount due upon the indebtedness to it of Hooker & Co., he, as assignee of Foote, was entitled to have the notes delivered to him, together with a transfer of the bank's judgment against Foote, the judgment to be satisfied of record by Rice upon the collection by him of the notes or enough thereon to satisfy the amount to be paid to the bank, together with his costs and expenses; and that upon such payment within thirty days from the date of the decree the bank should deliver the notes to Rice, with an assignment duly executed of its judgment against Foote. Pearce alone appealed from the decree.

*Mr. Huntington W. Jackson* for appellant.

I. The facts in the pleas of the bank and Pearce to which replications were filed by Rice having been proved, the cross-bill should have been dismissed. *Cammann* v. *Traphagan*, 1 N. J. Eq. (Saxton) 230; *Meeker* v. *Marsh*, 1 N. J. Eq. (Saxton) 198, 202; *Myers* v. *Dorr*, 13 Blatchford, 22; *Hughes* v. *Blake*, 6 Wheat. 453.

II. A decision of a controversy by a court of competent jurisdiction upon a full and fair trial on the merits cannot be

reëxamined, or the matter in controversy again drawn into question, unless in an appellate forum. *Wright* v. *Washington*, 5 Grattan, 645; *West* v. *Carter*, 129 Illinois, 249; *S. C.* 25 Ill. App. 245; *Giddens* v. *Lea*, 3 Humph. 133; *Clay* v. *Fry*, 3 Bibb, 248; *Jeune* v. *Osgood*, 57 Illinois, 340; *LeGuen* v. *Gouverneur*, 1 Johns. Cas. 436, 492; *Hempstead* v. *Watkins*, 6 Arkansas, 317; *Hendrickson* v. *Hinckley*, 17 How. 443; *Arrington* v. *Washington*, 14 Arkansas, 218; *Bank of the United States* v. *Beverly*, 1 How. 134; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Gelston* v. *Hoyt*, 3 Wheat. 246; *Hopkins* v. *Lea*, 6 Wheat. 109; *Campbell* v. *Goodall*, 8 Ill. App. 266; *Bennitt* v. *Wilmington Star Mining Co.*, 119 Illinois, 9.

III. Rice not being a party to the judgment against Foote, and the judgment at the time of its rendition not affecting any of his rights, he is not a party in interest and should not be permitted to file his cross-bill to set aside the judgment. *Stone* v. *Towne*, 91 U. S. 341; *Carter* v. *West*, 129 Illinois, 249.

IV. The transactions between Hooker & Co. and Foote were not prohibited by the Illinois statutes. *Jackson* v. *Foote*, 11 Bissell, 223.

*Mr. Lewis H. Bisbee* for appellee. *Mr. Robert H. Kern* and *Mr. Frank F. Reed* were with him on the brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

Does the bank's judgment against Foote preclude inquiry, in this suit, between the respective assignees of Foote and of Hooker & Co., as to whether the original claim of that firm against Foote, and Foote's transfer of the Couch notes to it with guaranty of payment, were void under the laws of Illinois?

The statute of Illinois referred to — being the part of the Criminal Code of that State, relating to "Gambling and Gambling Contracts" — provides:

SEC. 130. "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity, stock of any railroad or other company,

or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts so to do, in relation to any of such commodities, shall be fined not less than $10 nor more than $1000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

SEC. 131.  "All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages or other securities or conveyances made, given, granted, drawn or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof, shall be for any money, property or other valuable thing, won by any  .  .  .  wager or bet upon any  .  .  .  chance,  .  .  .  or unknown or contingent event whatever, or for the reimbursing or paying any money or property knowingly lent or advanced at the time and place of such  .  .  .  bet, to any person or persons so gaming or betting,  .  .  .  shall be void and of no effect."

SEC. 135.  "All judgments, mortgages, assurances, bonds, notes, bills, specialties, promises, covenants, agreements and other acts, deeds, securities or conveyances, given, granted, drawn or executed, contrary to the provisions of this act, may be set aside and vacated by any court of equity, upon bill filed for that purpose, by the person so granting, giving, entering into or executing the same, or by his executors or administrators, or by any creditor, heir, devisee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person aforesaid, on due notice thereof given."

SEC. 136.  "No assignment of any bill, note, bond, covenant, agreement, judgment, mortgage or other security or conveyance as aforesaid, shall, in any manner, affect the defence of the person giving, granting, drawing, entering into or executing the same, or the remedies of any person interested therein." Rev. Stats. Illinois, 1874, pp. 372, 373, c. 38.

The appellant invokes the general rule that a judgment is final and conclusive, in any subsequent suit, between the same parties or their privies, as to all matters actually determined,

or which were necessarily involved, in the first suit; also, the rule, recognized in the courts of the United States, that equity will not, at the instance of one against whom a judgment at law has been rendered, restrain the operation or effect of that judgment, unless there be equitable circumstances justifying its interference, or unless such person was prevented by fraud or accident, unmixed with fault or negligence upon his part, from making full defence at law.

The courts of Illinois have not regarded these rules as strictly applicable in cases under the law relating to gaming and gambling contracts. In *Mallett* v. *Butcher*, 41 Illinois, 382, 385, the Supreme Court of that State, construing the statute in question, held that all contracts having their origin in gaming were void, not voidable only, and that it was entirely immaterial when or how the fact was disclosed to the court; consequently, a suit in equity would lie to set aside a judgment at law on a note given for money lost in gaming with cards, where the obligor failed to make defence. The same question arose in *West* v. *Carter*, 129 Illinois, 249, 254, which was also a suit in equity to set aside a judgment — obtained without a real defence being made — upon a contract void under the gaming statute. It was there contended that sections 131 and 135 of the statute had no application to judgments except those rendered by confession; in other words, that those sections, in their application to judgments, affected only such as resulted from the voluntary act of the defendant. But the court refused to so restrict the operation of section 131. The judgments, promises and instruments therein specified being void and of no effect, "it is not," said the court, " in the power of the party to whom made, granted, given or executed, or in whose interest they are drawn or entered into, to give the contract validity. Nor can the court, at the instance of such party, any more than it could by the confession or consent of the defendant, vitalize the contract, and by its judgment defeat the effectiveness of the proceeding in equity authorized by the 135th section of the statute to set aside the void contract. . . . The rule in equity, that courts of chancery will not take jurisdiction when there is an adequate defence or remedy

at law, must yield to the requirements of this statute, that relief may be granted in a court of equity to vacate and set aside judgments and contracts obtained in violation of this provision."

These cases, in effect, decide that the judgments which the statute permits to be vacated, upon bill in equity or motion, embrace those on confession, as well as those rendered upon default, or without a direct issue, fully and fairly tried, between proper parties. It is consistent with those cases to hold — as upon any sound interpretation of the statute, and in obedience to the principles of equity obtaining in the courts of the United States, we must hold — that Foote's liability upon his guaranty of the Couch notes was, as between the bank and him, fixed by the judgment upon the direct issue in the suit at law, as to such liability, and which judgment has not been modified or reversed. Neither he nor Rice, claiming under an assignment executed after that judgment, could have it annulled by decree in a court of the United States, except upon some ground recognized in the courts of the United States as sufficient for the interference of equity.

Still, it is clear that the result for which the appellant contends does not follow. The two Couch notes were held by the bank only as collateral security for its claim against Hooker & Co. According to some adjudged cases, if the point had been made in the suit at law, the judgment against Foote would have been restricted to the real amount of the bank's claim. It is an undisputed fact that the amount due from Hooker & Co. to the bank, at the date of its judgment against Foote, April 17, 1882, computing the interest at ten per cent per annum, was less than one-half of the sum for which it took judgment. The excess over the amount really due from Hooker & Co., did not, in any view, equitably belong to the bank; but, as between it and Pearce, to the latter. Its interest in Foote's guaranty was measured by the amount of the indebtedness of Hooker & Co. to it at the date of the judgment against Foote. If the bank had collected the entire amount of that judgment from Foote, it would have been bound to account to the assignee of Hooker & Co. for the bal-

ance remaining after its demand against that firm was satisfied; and this for the reason that it could not be deemed a *bona fide* holder for value except to the extent of its demand against Hooker & Co. Story on Prom. Notes, § 195; *Mayo* v. *Moore*, 28 Illinois, 428; *Williams* v. *Smith*, 2 Hill, 301; *Stoddard* v. *Kimball*, 6 Cush. 469; *Chicopee Bank* v. *Chapin*, 8 Met. (Mass.) 40; *Farwell* v. *Importers' and Traders' Bank*, 90 N. Y. 483, 488; *Allaire* v. *Hartshorne*, 21 N. J. Law, (1 Zabr.) 665; *Maitland* v. *Citizens' Nat. Bk. of Baltimore*, 40 Maryland, 540, 570; *Union Nat. Bank* v. *Roberts*, 45 Wisconsin, 373, 379; *Tarbell* v. *Sturtevant*, 26 Vermont, 513, 517; *Valette* v. *Mason*, 1 Indiana, 89; *First Nat. Bk. of Dubuque* v. *Werst*, 52 Iowa, 684, 685; *Citizens' Bank* v. *Payne*, 18 La. Ann. 222. All the bank can equitably claim in this suit is the amount due it from Hooker & Co., which was admitted and found to have been only $8459 at the date of the decree in this case. And its substantial rights were not disturbed by the decree under review; for its judgment against Foote, which was only collateral security for that claim, was not set aside, but the payment of the above amount made a condition precedent to its surrender of the Couch notes, and the assignment of that judgment. Neither the bank nor Rice complains of the decree in that form.

So, that the real question before us is as to the respective claims of the assignee of Hooker & Co. and the assignee of Foote to the possession of the Couch notes, and to the right of the appellant to enforce the judgment against Foote after the amount due the bank is paid. In determining these matters, must we assume, as between those assignees — neither having taken any greater rights than their assignors had — that the transfer of the Couch notes to Hooker & Co. by Foote, and the latter's guaranty of those notes, were valid contracts under the above statutes of Illinois? Did the judgment of the bank establish the validity of those contracts as between Foote and Hooker & Co.? These questions must receive a negative answer. Hooker & Co. were not parties to the action at law, and there was no issue in it between them and Foote. Within the law of estoppel, there was no privity be-

tween the bank and Hooker & Co.; certainly none that entitled the latter to rely upon the bank's judgment as conclusively establishing their claim against Foote. Hooker & Co. had no right to control, in anywise, the proceedings in that suit. While liable to the bank upon their own note, they were not liable to it upon the Couch notes or upon Foote's guaranty of them, for they simply deposited the notes, thus guaranteed, with the bank as collateral security, without endorsing them. It is true they had a pecuniary interest in the bank's succeeding in its action against Foote, and it may be that the same facts that would constitute a good defence, under the statute, for Foote, if sued by Hooker & Co., would equally have protected him against liability to the bank upon that guaranty. But these circumstances do not show such privity between the bank and Hooker & Co. as to conclude Foote, the bank having been successful, or to have concluded Hooker & Co. if Foote had succeeded, in respect to matters in dispute between him and that firm. In no legal sense was Hooker & Co. represented in the action upon Foote's guaranty. If they had sued him upon his guaranty, and, pending that action, the Couch notes had been transferred to the bank with the guaranty of payment endorsed thereon, there would have been such privity between Hooker & Co. and the bank as, perhaps, to have made the judgment against Foote conclusive for, and a judgment in his favor conclusive against, both Hooker & Co. and the bank, in respect to the matters litigated; for, in the case supposed, Hooker & Co. would have been parties to the judgment, and the bank, although not a party, would have succeeded to the rights asserted by that firm after the institution of the suit, and from a party thereto. *Orthwein* v. *Thomas,* 127 Illinois, 554, 571; 1 Greenl. Ev. §§ 523, 524. In respect to the two Couch notes in question, the issue is presented in this suit for the first time between Hooker & Co. and Foote as to whether the transfer and guaranty of those notes to that firm were upon such a consideration as rendered the transfer and guaranty void under the statute. The bank's judgment against Foote having enured, in equity, to its benefit only to the extent of its demand against Hooker

& Co. neither he, nor his assignee, nor any person interested, was estopped thereby from proving as against Hooker & Co. or their assignee the real nature of the transactions on the Chicago Board of Trade in which that firm represented Foote. Any other view would tend to defeat the manifest object for which the statute was enacted.

In respect to the character of the transactions resulting in the claim of Hooker & Co. against Foote for $22,165.72, which the latter settled by a transfer of the four Couch notes, with guaranty of their payment, but little need be said. What the evidence was upon this point in Jackson, Receiver, &c. v. Foote, we are not informed otherwise than by the opinion of the court in that case. But the evidence before us is overwhelming to the effect that the real object of the arrangement between Hooker & Co. and Foote was, not to contract for the actual delivery, in the future, of grain or other commodities — which contracts would not have been illegal (*Pickering* v. *Cease*, 79 Illinois, 328, 330) — but merely to speculate upon the rise and fall in prices, with an explicit understanding, from the outset, that the property apparently contracted for was not to be delivered, and that the transactions were to be closed only by the payment of the differences between the contract price and the market price at the time fixed for the execution of the contract. There was no material part of the claim of Hooker & Co. that was not based upon a palpable violation of the statute. The parties deliberately engaged in what is called gambling in differences. It results that both the transfer and guaranty of the Couch notes to Hooker & Co. were void under the statute, and passed no title to them or to their assignee. It was so ruled by the Supreme Court of Illinois in *Pearce* v. *Foote*, 113 Illinois, 228, (decided after *Jackson, Receiver, &c.* v. *Foote*,) which was a suit by Pearce, as assignee of Hooker & Co., on one of the four Couch notes transferred to that firm by Foote. See also *Tenney* v. *Foote*, 95 Illinois, 99 ; *Lyon* v. *Culbertson*, 83 Illinois, 33 ; *Pickering* v. *Cease*, 79 Illinois, 328 ; *Irwin* v. *Williar*, 110 U. S. 499 ; *Barnard* v. *Backhaus*, 52 Wisconsin, 593 ; *Love* v. *Harvey*, 114 Mass. 80 ; *Flagg* v. *Baldwin*, 38 N. J. Eq. (11 Stewart,) 219 ; *Bigelow* v. *Benedict*, 70 N. Y. 202.

It is contended, however, that, under the pleadings and the rules of practice adopted for the equity courts of the United States, no decree could properly have been rendered, except one dismissing the cross-bill of Rice. The bank filed a plea and answer together; the plea setting up the proceedings and judgment at law in bar of Rice's cross-suit, and saving to the bank the benefit thereof. Pearce, as assignee of Hooker & Co., filed an answer, the first part of which, as did the plea of the bank, set out the proceedings and judgment in the action at law upon Foote's guaranty, relying upon them in bar of Rice's cross-suit, and praying that he might have the same benefit as if he had pleaded them. To the plea and answer of the bank, and to the answer of Pearce, general replications were filed by Rice, whereby, it is insisted, Rice admitted the sufficiency in law of the matters pleaded in bar; and, as the facts relating to the action at law were proven, the cross-bill of Rice, it is contended, should have been dismissed, as of course.

In support of this contention *Hughes* v. *Blake*, 6 Wheat. 453, 472, is cited. It was there said: " The truth of the plea, being thus made out, what is to be the consequence? If the rule of courts of equity in England is to be applied, there can be no doubt. If a plea, in the apprehension of the complainant, be good in matter, but not true in fact, he may reply to it, as has been done here, and proceed to examine witnesses in the same way as in case of a replication to an answer; but such a proceeding is always an admission of the sufficiency of the plea itself, as much so as if it had been set down for argument and allowed; and if the facts relied on by the plea are proved, a dismission of the bill on the hearing is a matter of course." That case was decided at February term, 1821, of this court. The rule there announced was undoubtedly in accordance with the long established practice in courts of equity. *Farley* v. *Kittson*, 120 U. S. 303, 314; Story's Eq. Pl. § 697; 1 Daniell's Ch. Pl. & Pr. 695; 1 Smith's Ch. Pr. 234; Mitford's Ch. Pl. 302–3; *Harris* v. *Ingledew*, 3 P. Wms. 91, 94. But, at the succeeding term, in 1822, of this court, rules of practice for the equity courts of the United States were adopted under the authority conferred by the act of May 8, 1792, 1 Stat. 275,

c. 36. Rule 19 of that series provided: "The plaintiff may set down the demurrer or plea to be argued, or he may take issue on the plea. If, upon an issue, the facts stated in the plea be determined for the defendant, they shall avail him as far as in law and equity they ought to avail him." 7 Wheat. x. This subsequently became, and is now, equity rule 33. It clearly takes from the establishment of the plea the effect it had under the old law. When, by filing a replication, issue is taken upon a plea, the facts, if proven, will now avail the defendant only so far as in law and equity they ought to avail him. Under the existing rule the court may, upon final hearing, do, at least, what, under the old rule, might have been done when the benefit of a plea was saved to the hearing. "When," says Cooper, "the benefit of the plea is saved to the hearing, the decision of the cause does not rest upon the truth of the matter of the plea; but the plaintiff may avoid it by other matter, which he is at liberty to adduce." Cooper's Eq. Pl. 233. See also Story's Eq. Pl. § 698; Mitford's Eq. Pl. 303; *Hancock* v. *Carlton*, 6 Gray, 39, 54. See also *United States* v. *Dalles Military Road Co.*, 140 U. S. 599, 616, 617.

So far as the bank is concerned, it obtained by the decree below all it was entitled to demand; for the conclusiveness of its judgment against Foote is recognized to the full extent of its actual interest in it, namely, the amount of its claim against Hooker & Co. for which the guaranteed notes were held as collateral security. It has no cause to complain, and does not complain.

In respect to the assignee of Hooker & Co., he was not entitled to a dismissal of the cross-bill upon proof merely of the proceedings and judgment in the bank's suit against Foote; because, under the evidence in the cause, and for the reasons already given, that judgment did not estop Foote or his assignee from showing, as has been done, the illegal character of the transactions out of which arose the claim of Hooker & Co. against Foote, and the transfer by the latter of the Couch notes with guaranty of payment. Consequently, the facts stated in the pleadings of Pearce as to the proceedings and judgment in the action against Foote, although established, cannot properly

avail him in this suit. The court was at liberty to determine, under the pleadings and evidence, the relief to which the respective parties were entitled.

It is further contended that Rice, the assignee of Foote, was not one of those authorized by the statute to proceed by bill in equity or by motion to set aside or vacate a judgment, mortgage, assurance, bond, note, bill, specialty, covenant, agreement, act, deed, security or conveyance, given or executed, in violation of the statute relating to gaming and gambling contracts. We think he was. The evidence shows that the assignment to him was in good faith and for a valuable consideration. It is clear that he was a person interested in the object to be attained by the proceeding which the statute authorizes.

These views sustain the decree below, and it is

*Affirmed.*

Mr. Chief Justice Fuller and Mr. Justice Gray did not hear the argument, nor take part in the decision of this case.