# WADE *v.* UNITED STATES.

STATUTES; CRIMINAL LAW; GAMING; BUCKET SHOPS.

1. The intention of the legislature must govern in the construction of penal as well as other statutes; and while penal statutes are to be strictly construed, they are not to be construed so strictly as to defeat the obvious intention of the legislature.

2. *Quære,*—Whether a person conducting a bucket shop sets up or keeps a gaming table within the meaning of sec. 865, D. C. Code [31 Stat. at L. 1331, chap. 854], making it an offense for anyone to so do, and sec. 868, defining a gaming table to be "all games, devices, or contrivances at which money or any other thing shall be bet or wagered," and requiring the courts to construe the sections of the Code relating to gaming liberally, so as to prevent the mischief intended to be guarded against. (Citing *Miller* v. *United States*, 6 App. D. C. 6.)

3. The transactions of bucket shops involve the receipt and making of bets on an uncertain event, namely, the probable rise or fall of the market price of things to be bought or sold, and constitute gaming; and one who keeps a place where such transactions are carried on is punishable under sec. 865, D. C. Code, prohibiting the keeping of a house for gaming, especially in view of sec. 868, D. C. Code, requiring the courts to construe the sections relating to gaming liberally, so as to prevent the mischief intended to be guarded against.

No. 1956.  Submitted February 2, 1909.  Decided March 2, 1909.

HEARING on an appeal by the accused from a judgment of conviction of the Supreme Court of the District of Columbia in the trial of an indictment for maintaining a place for the purpose of gaming, and with setting up and keeping a gaming device. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal [by Percy Wade] from a conviction under an indictment charging a violation of the laws to prevent gaming. The indictment is in two counts. The first is substantially set out in appellant's brief as follows:

"The first count of the indictment, upon which conviction was had, charges that the appellant and said Hedges did set up and keep, in the District of Columbia, a place for the purpose of gaming, between August 20, 1906, and August 20, 1907; that is, an office in the Ouray building, in said District, and for such purpose of gaming did engage in and conduct a pretended brokerage business under the name of Wade & Hedges, for the making of contracts between them and other persons for the pretended buying on commission for such other persons, as brokers, of shares of the stocks of railroads and other corporations at prices to be agreed upon between them, being the market prices of such shares of stock on the New York Stock Exchange at the time of such transactions, as such prices were reported by telegraph to said Wade & Hedges, with no intention on the part of said Wade & Hedges and the pretended buyers in such transactions to deliver the property so dealt in, or that the same shall be paid for and received, but with the understanding on the part of both that such transactions should be merely betting and wagering contracts upon the fluctuations in the market prices of the shares of stock so contracted for, and, under such bets and wagers, in case there was a rise, such buyers should win, and in case there was such fall said Wade & Hedges should win, and that the sums to be paid by the one party to the other in the settlement of such bets and wagers should be the difference between the prices of the property, as fixed by such pretended contracts of purchase, and the market prices thereof at the time of such settlement. Said count then sets up the reverse of the above transaction, wherein the customers are the pretended sellers of stocks, and said Wade & Hedges the pretended buyers thereof, with a like absence of intention on the part of both to deliver, and with the intention on

the part of both to settle on differences. And further charges that, for such purpose of gaming by means of said pretended business, said Wade & Hedges maintained at said place and office a blackboard and telegraph instrument, called a ticker, from and through which ticker were received the market prices of shares of stock dealt in and recorded on said blackboard and exhibited to their said customers."

The second count charges the defendants with setting up and keeping a game, device, aand contrivance for gaming known as a bucket shop, the nature of which is charged as in the first count. A severance was granted and Wade only was tried. The jury returned a verdict of guilty under the first count. Defendant then moved in arrest of judgment on the ground that the indictment charged no offense under the laws of the District. This was overruled, and the single assignment of error is founded thereon.

*Mr. Henry E. Davis, Mr. Richard C. Thompson,* and *Mr. John E. Laskey* for the appellant.

*Mr. Daniel W. Baker,* U. S. Attorney for the District of Columbia; *Mr. Stuart McNamara,* and *Mr. F. Sprigg Perry,* Assistants, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Section 865 of the Code, which defines the offense, reads as follows:

"Gaming.—Whoever shall, in the District, set up or keep any gaming table, or any house, vessel, or place, on land or water, for the purpose of gaming, or gambling device commonly called A B C, faro bank, E O, roulette, equality, keno, thimbles, or little joker, or any kind of gaming table or gambling device adapted, devised, and designed for the purpose of playing any game of chance for money or property, or shall induce, entice, and permit any person to bet or play at or upon any such

gaming table or gambling device, or on the side of or against the keeper thereof, shall be punished by imprisonment for a term of not more than five years." [31 Stat. at L. 1331, chap. 854.]

Section 868, which relates the construction of sec. 865 and others reads as follows:

"What is Gaming Table.—All games, devices, or contrivances at which money or any other thing shall be bet or wagered shall be deemed a gaming table within the meaning of these sections; and the courts shall construe the preceding sections liberally, so as to prevent the mischief intended to be guarded against."

Two offenses are created by sec. 865. One is the setting up or keeping of a gaming table or device; the other is the keeping of a house, vessel, or place for the purpose of gaming.

The contention on behalf of the appellant is that transactions of the character charged do not constitute gaming within the letter of the Code, and cannot be converted into gaming because, in the opinion of the court, they may come within its reason and mischief. It is true, as a general principle, that criminal statutes which specifically enumerate acts, or places in which they shall be committed, and make them punishable as offenses, cannot be made to embrace other acts or places merely because they may be said to be within the reason and policy of the law, for the reason that they are of equal atrocity, and of a kindred character. *United States* v. *Wiltberger,* 5 Wheat. 76, 93, 5 L. ed. 37, 42. That case, which is relied on by the appellant in support of his contention, differs widely from this in respect of the question for decision. In declaring the principle above stated, it also affirms the familiar principle, that the intention of the lawmaker must govern in the construction of penal as well as other statutes; and that while penal statutes are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. See *Miller* v. *United States,* 6 App. D. C. 6, 12. In that case the indictment was for keeping a gaming table and a place for the purpose of gaming. The specific act charged was what is called "book making" on races; that is, taking bets on the result of races about to be run. "Book making" is not specifically

named in the statute.  The contention of the appellant was the same as in this case.  Chief Justice Alvey, who delivered the opinion of the court, affirming the conviction, said: "The definition of a gaming table under the statute does not involve the ordinary mechanical definition of a table, but depends for its statutory meaning upon the means or contrivances adopted for playing the game.  If any doubt could arise upon the construction of the terms of the first section of the act of 1883 [which is now sec. 865, Code], that doubt would seem to be entirely and completely removed by the very explicit terms of the fourth section of the act [now sec. 868], which was inserted *ex industria* for the manifest purpose of repelling ingenious attempts to evade the real scope and policy of the act by subtle and refined distinctions and definitions.  *  *  *  This statute of 1883 was not aimed exclusively at any particular game or species of device for gaming, but was intended, as its title and its broad, comprehensive provisions declare, more effectually to suppress gaming in this District.  The reason and policy of the law, as well as its comprehensive language, apply as well to all games and devices then existing, as to all that might be subsequently devised and practised.  That being the object to be accomplished, what could be more grossly obnoxious to the provisions of the statute, or more demoralizing to the community, than the existence of places for the making and selling of books and pools upon horse races, baseball games, foot races, dog fights, cock fights, and all other conceivable contests upon which money may be bet or wagered.  The great evil and vice of the thing is not in the horse race, the foot race, or the baseball game, but in the seductive allurements held out to people, young and old, to frequent the gaming table or the gambling device, and to indulge in excessive betting, and thereby become the victims of the wily and scheming professional gambler.  Whether the game or contest upon which the wager is made be a horse race, foot race, baseball game, or what else, it is quite immaterial, if the thing or contest upon which the bet or wager is made be a game of chance."

With the end in view to prohibit all gaming, the legislature

found it impracticable to enumerate each and every kind then practised and much less so to anticipate the ingenuity of the gambler in devising new schemes for gaming when driven from old and well known ones. For this reason, evidently, sec. 868 declared "all games, devices, or contrivances at which money or any other thing shall be bet or wagered shall be deemed a gaming table within the meaning of these sections;" and then further, that, "the courts shall construe the preceding sections liberally, so as to prevent the mischief intended to be guarded against." [31 Stat. at L. 1331, chap. 854.]

If "book making" on the result of races, which, when the statute was enacted, was as well known a form of taking bets and wagers as were "bucket shop" transactions, is a contrivance for gaming, then there is no reason why the latter should be excepted from the operation of the statute intended to prevent gaming generally.

However, we are not required, by the demands of the present case to determine whether one conducting a "bucket shop" sets up or keeps a gaming table, within the definition of the statute. This is not the offense at which the conviction arises. Assuming, for the purpose of the argument only, that the ticker and blackboard as used do not constitute a gaming table, yet, if the transactions of the bucket shop constitute gaming, one who keeps a place where such transactions are carried on is punishable by the terms of the statute. The scheme is nothing less than the receipt and making of bets on an uncertain event; namely, the probable rise or fall of the market prices of the things pretended to be bought or sold. Betting and wagering of this kind constitutes gaming in the ordinary sense of the word, notwithstanding it may be carried on under the guise of trade contracts. The law looks to the substance, and not the form, in determining the true character of such transactions. The alleged contracts made in the conduct of such transactions have uniformly been denied obligation in civil actions, on the ground that they are not contracts in fact, but wagering and gambling schemes, and therefore illegal and void as against public policy. *Irwin* v. *Williar,* 110 U. S. 499, 511, 28 L. ed.

225, 230, 4 Sup. Ct. Rep. 160; *Embrey* v. *Jemison,* 131 U. S. 336, 345, 33 L. ed. 172, 176, 9 Sup. Ct. Rep. 776; *Pearce* v. *Rice,* 142 U. S. 28, 40, 35 L. ed. 925, 930, 12 Sup. Ct. Rep. 130; *Clews* v. *Jamieson,* 182 U. S. 461, 489, 45 L. ed. 1183, 1196, 21 Sup. Ct. Rep. 845. In the case first cited it was said: "It makes no difference that a bet or wager is made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade."

Entertaining no doubt that the transactions of the appellant, as charged in the indictment, constitute gaming, it follows that, by keeping a place where such gaming was conducted, the defendant brought himself within the letter of the statute. The court did not err in denying the motion in arrest of judgment. The judgment will, therefore, be affirmed with costs.

*Affirmed.*