John D. HUX, Receiver of the Federal Grain Company, Inc., Plaintiff-Appellant,

v.

Sydney J. BUTLER (Mrs. L. V. Butler), Defendant-Appellee.

No. 15516.

United States Court of Appeals
Sixth Circuit.

Dec. 30, 1964.

James E. Reeves, Caruthersville, Mo., for appellant.

Lucius E. Burch, Jr., Memphis, Tenn., Wade H. Sides, Jr., Memphis, Tenn., on brief, for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and WILLIAM E. MILLER, District Judge.

WILLIAM E. MILLER, District Judge.

This action was brought in the United States District Court for the Western District of Tennessee by the receiver of Federal Grain Company, a Georgia corporation which had its principal place of business in Missouri but is now in receivership in the United States District Court for the Eastern District of Missouri, to recover from Mrs. Sydney J. Butler, a resident of Memphis, Tennessee and the wife of L. V. "Jimmie" Butler, funds of the corporation which were lost in speculative commodity futures transactions. The total recovery sought in the three count complaint is $98,439.65. Count I ($14,333.65) involves funds which passed directly from Federal Grain into Mrs. Butler's trading accounts with brokerage firms in Memphis; count II ($35,350.00) involves funds which can be traced from Federal Grain through dummy corporations and a proprietorship and through Mrs. Butler's personal checking account into her trading accounts; and count III ($48,756.00) involves the funds of one of the dummy corporations of which* Federal Grain is a judgment

creditor which can also be so traced. The District Court, sitting without a jury, found for the defendant on all three counts. Hux v. Butler, 220 F.Supp. 35. The receiver appeals.

L. V. "Jimmie" Butler is a widely known speculator in grain futures. For a number of years prior to the bringing of the present action he had speculated in the commodity futures market, buying and selling for future delivery large quantities of wheat, corn, soybeans, and other agricultural products without intending to make or accept delivery. Such transactions have been condemned as gambling transactions by state legislatures, including Tennessee, Tenn.Code Ann. § 39–2020 (1956), and by state and federal courts, e. g., Pearce v. Rice, 142 U.S. 28, 12 S.Ct. 130, 35 L.Ed. 925 (1891); Burke Grain Co. v. St. Paul-Mercury Indemnity Co., 94 F.2d 458 (8th Cir. 1938); Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937); Easterly v. Myers, 24 Tenn.App. 688, 148 S.W.2d 640 (Tenn.App., E.S., 1940).

When fortune smiled on Jimmie Butler, his speculations reportedly netted him millions of dollars and he purchased for his wife and family a large home situated on fifty acres of land in or near Memphis. When fortune frowned he was convicted and sentenced to penitentiary confinement for forging warehouse receipts, was adjudged a bankrupt with over two million dollars in unsatisfied judgments outstanding and lost twenty acres of the homesite which had been recorded in his name. The dwelling and thirty acres remained in the family since they had been a gift to and were recorded in the name of his wife, Sydney.

Having served his forgery sentence, Butler interested two businessmen in forming a corporation to purchase grain elevators and to hire himself to manage them. The corporation, the receiver of which has brought this action, was organized as the Federal Grain Company with the two businessmen each acquiring 50% of the outstanding stock. The corporation purchased five grain elevators subject to substantial mortgages and Butler was placed in charge with the official title of "Consultant." Almost immediately he began to use Federal funds to speculate in commodity futures. Conflicting testimony was presented to the trial court as to whether this use of Federal funds was approved by the two shareholders of the corporation. There was also conflict as to whether Butler, if not authorized to speculate as he did, did so with the intent of embezzling the funds so used. It is our opinion, however, that the resolution of these factual issues is not material to the determination of the appellant's right to recover.

■■ The use of corporate funds to speculate or gamble in the commodity market is at best an *ultra vires* transaction. Fagerberg v. Phoenix Flour Mills Co., supra. In addition, in Tennessee the legislature has declared transactions of such character to be illegal. Tenn.Code Ann. § 39–2020 (1956). It necessarily follows, therefore, that if such use of corporate funds has not been approved by the shareholders, the corporation itself would have a cause of action to recover losses from the responsible officers. Fagerberg v. Phoenix Flour Mills Co., supra. And whether such use has been condoned by the shareholders a receiver in bankruptcy representing the creditors may recover for their benefit from the officers making such use of corporate funds. Wells v. Neill, 162 Miss. 30, 138 So. 569 (1932). The liability for so misusing corporate funds arises from the officers' contractual relationship as employees of the corporation, but their misfeasance would clearly appear to be tortious. See Prosser, Torts § 93, at 637 (3rd ed. 1964). The duty which is breached is one the officers owe the creditors of the corporation as fiduciaries. See Wells v. Neill, supra.

It is apparent that Jimmie Butler would be liable in tort to the appellant, the receiver of Federal Grain, for any losses resulting from his speculative use of corporate funds. Since he has no assets from which this obligation might be satisfied, the resourceful receiver has

brought this action against his wife, Sydney. The receiver advances several theories upon which he claims Mrs. Butler should be held liable, all of which arise out of her participation in her husband's misuse of corporate funds.

As a result of being convicted of forgery and being adjudged a bankrupt, Butler was barred from trading on the commodity exchanges. Consequently, he had his wife open accounts with brokers in her name and into these accounts he funnelled the funds of Federal Grain. The routes which these funds took were usually devious, winding through two dummy corporations, Reynolds Cotton Company and Best Gin and Land Company, and one proprietorship, Henning Grain Company, all three of which were controlled by Butler. It is the net amount of Federal funds which can be traced into these trading accounts plus the funds of one of the dummy corporations, Best Gin, of which Federal is a judgment creditor in the amount of $141,700.35, which can also be so traced, that the receiver seeks to recover from Sydney Butler in this action.

Mrs. Butler's active participation in her husband's misuse of corporate funds consisted almost entirely of affixing her signature to the various instruments which he placed before her. These included corporate checks totaling thousands of dollars, checks on her personal checking account payable to brokers, brokerage contracts and all other documents necessary to facilitate the speculative futures transactions being carried on in her name. The general pattern of these transactions was that Butler would have the appellee endorse for deposit in her checking account checks payable to her in amounts ranging from $1,000.00 to $21,556.00 drawn by one of the dummy corporations, Reynolds Cotton. Mrs. Butler would then sign checks drawn on her checking account payable to the brokers. This was the manner in which the bulk of the funds claimed in counts II and III passed through Mrs. Butler's personal checking account into her trading accounts. (There appears to have been one check for $15,000.00 drawn by Best Gin and five totaling approximately $10,000.00 drawn by Henning Grain.) All orders to the brokers were placed by Butler acting as his wife's agent under authorizations signed by her. At trial, Mrs. Butler testified that she knew nothing of the workings of the commodity market and that she participated when and as she did only at the request of her husband. She testified that she dutifully signed the documents placed before her never bothering to question the wisdom or propriety of the transactions.

■ Unless her conduct may be excused on the ground that she acted innocently, Prosser, op. cit. supra, at 260, we are of the opinion that appellee, Sydney Butler, is liable to the plaintiff as a joint tortfeasor in cooperating with her husband in using corporate funds for speculative purposes. The controlling principle is stated in Prosser, op. cit., supra, at 258–259:

> "The original meaning of a 'joint tort' was that of vicarious liability for concerted action. * * *
>
> * * * * * *
>
> "This principle, somewhat extended beyond its original scope, is still law. All those who, in the pursuance of a common plan or design to commit a tortious act, actually take part in it, or futher it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit are equally liable with him."

That Mrs. Butler did in fact cooperate with her husband in allowing him complete freedom in using her name and in signing and endorsing checks and other necessary documents appears from the record without dispute. Her defense, as we understand it, is in essence that she did not know that her husband was wrongfully converting or using the funds of Federal Grain and that she was not a conscious or knowing participant in a scheme to defraud that corporation. This appears to have been the view adopted by the trial court. However, as we have

pointed out if Mrs. Butler knowingly participated with her husband in the use of corporate funds for speculative or gambling purposes, it seems altogether clear that she would be equally liable with him for any losses to Federal Grain directly or proximately caused by such tortious conduct and activity. As we read the record, while there may be some doubt that Mrs. Butler had actual knowledge that her husband was embezzling or converting the funds of Federal Grain, if it be assumed that he was, the evidence is convincing that she did have actual knowledge that her husband was engaging in speculative schemes as he had done in the past, that her name was being used to effectuate such schemes, and further that he was not using his own money for these purposes but the funds of various corporations and one proprietorship. From her own testimony it appears that she had known that her husband had been a speculator for many years. She knew that he was speculating when he traded in her name in the past, and she "guessed" that he was speculating with at least some of the funds constituting the subject of the present action when her name was being similarly used. Her endorsement appears upon numerous checks of corporations payable to her. (The fact that Federal's name does not appear on these checks is not material since the gravamen of the tortious conduct in which she participated is the use of corporate funds for speculative purposes proximately causing losses to Federal Grain and its creditors.) Her signature also appears on her personal income tax return for the year in which most of the transactions took place in which losses from commodity transactions were declared for Federal Grain in the amount of $9,343.00, and for one of the dummy corporations, Best Gin, in the amount of $65,556.00. She also endorsed over to Federal Grain a check drawn by one of the brokers payable to her in the amount of $4,578.00, for which the receiver agrees Mrs. Butler is entitled to a credit, thereby reducing the recovery sought under count I to $9,755.65. She also signed numerous checks drawn on her own checking account payable to brokers. While doing all this she knew that her husband, although adjudged a bankrupt, still had substantial judgments outstanding against him and that he could not have property in his own name. She was of course aware of the fact that her husband had been required to serve a penitentiary sentence because of activity related to his prior speculations.

Even if it should be assumed that such facts fall short of establishing actual knowledge on the part of Mrs. Butler that she was aiding and assisting her husband in the use of corporate funds for speculative and gambling purposes, it could hardly be denied that such facts are more than sufficient to charge her with constructive knowledge of the nature of the transactions which were being carried on in her name and of the use which was being made of the large funds which were passing through her hands. As a reasonable prudent person she was charged with knowledge of facts which inquiry would have disclosed. It seems clear from the record that the slightest inquiry on her part would have fully disclosed to her the character of the transactions themselves, as well as the source of the funds which were being used.

This rule of constructive notice is recognized in Tennessee, having been reaffirmed in the comparatively recent case of Texas Co. v. Aycock et ux., 190 Tenn. 16, 27, 227 S.W.2d 41, 46, 17 A.L. R.2d 322 (1950) :

> "In our State, as far back as the case of Woodfolk v. Blount, 4 Tenn. 147, 151, 9 Am.Dec. 736, it was held: 'When anything appears which would put a man of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences.' "

Mrs. Butler testified to the effect that she complied with the requests of her husband in allowing the use of her name and in signing necessary papers,

checks and documents because she was his trusting and dutiful wife, and that as such she would have signed any paper or document which he placed before her. The existence of the marital relationship, however, no longer operates to relieve a *femme covert* from full responsibility for her tortious conduct. The removal of most of the legal disabilities of coverture, accomplished both by legislation and judicial decision, has imposed upon married women correlative duties and obligations. The same social change which enabled a married woman to accept a bona fide gift fom her husband and hold it free from the obligations of his creditors also destroyed the presumption that when a wife committed an offense in the presence of her husband, she did so under his influence and duress. Comment, 35 Tul.L. Rev. 440 (1961). In discussing the criminal liability of a wife for conspiring with her husband, Justice Frankfurter stated in United States v. Dege, 364 U.S. 51, 53–54, 80 S.Ct. 1589, 1591, 4 L.Ed.2d 1563 (1960):

"[T]hat a wife must be presumed to act under the coercive influence of her husband and, therefore, cannot be a willing participant * * * implies a view of American womanhood offensive to the ethos of our society.

* * *

"For this Court now to act on * * * the medieval view that husband and wife 'are esteemed but as one Person in Law, and are presumed to have but one Will' would indeed be 'blind imitation of the past.' It would require us to disregard the vast changes in the status of woman—the extension of her rights and correlative duties— whereby a wife's legal submission to her husband has been wholly wiped out, not only in the English-speaking world generally but emphatically so in this country."

The only question remaining is the extent of Mrs. Butler's liability to the appellant. Liability in tort extends to all losses proximately caused by the tortious conduct. Although the receiver in the present case drafted the second amended complaint, on which the case went to trial, by dividing it into three counts based on the routes which the funds followed from Federal into Mrs. Butler's accounts, and although he urged different theories of liability under each, we find it unnecessary to discuss such theories in detail since it appears without substantial dispute that all of the losses claimed in the three-count second amended complaint, aggregating $93,-861.65, after allowance of the agreed credit of $4,578.00, were the direct and proximate result of the tortious conduct in which we find that Mrs. Butler participated with her husband. This is true as to funds of Federal Grain directly traced into Mrs. Butler's trading accounts. In our opinion it is equally true as to losses sustained by Federal as a judgment creditor of Best Gin whose funds were similarly traced.

The receiver urged joint tort liability on the basis of civil conspiracy, but we do not find it necessary to consider the question of conspiracy in view of our finding that Mr. and Mrs. Butler were joint tortfeasors in any event. In this connection, it has been questioned whether conspiracy, in the sense in which its application was urged in this case, is a separate, substantive tort. Hughes, The Tort of Conspiracy, 15 Mod.L.Rev. 209 (1952). See also Comment, 23 Ga.B.J. 548 (1961); Comment, 12 Vand.L.Rev. 958 (1959).

Entertaining the view that Mrs. Butler knowingly participated with her husband in the commission of a tort which directly caused the losses sued for, the judgment of the Distrit Court is reversed and the action is remanded to that Court with directions to vacate its judgment of dismissal and to enter judgment for appellant against the appellee in the amount of $93,861.65.