# CHARLES P. MALLETT

## *v.*

## EDWARD G. BUTCHER *et al.*

1.  JURISDICTION IN CHANCERY — *when there was a defense at law which was not asserted — the general rule.* The general doctrine is, that when a party has a defense to an action at law, known to him and he fails to make it, no court can relieve him.

2.  SAME — *exception as to judgments rendered on gambling contracts.* But by statute all judgments rendered on gambling contracts are void, and may be set aside and vacated by any court of equity upon bill filed for that purpose, although the character of the contract could have been set up as a defense in the suit at law in which such judgment was rendered, and the party had knowledge of the defense and omitted to assert it.

3.  FORMER DECISION. The case of *Abrams* v. *Camp*, 3 Scam. 290, is overruled upon this question.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Mr. SAMUEL STRAWDER and Mr. C. J. JOHNSON for the plaintiff in error.

Mr. O. F. WOODRUFF for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Whiteside Circuit Court, exhibited by Charles P. Mallett against Edward C. Butcher and James Corking, to set aside a judgment on a note given for money lost at gambling with cards at a game called " faro."

The bill contains all the necessary averments in such a case. The defendants put in a demurrer to the bill, which the court sustained, and dismissed the bill. From this decree the complainant prosecutes a writ of error to this court, assigning this decree as the principal error.

The bill was filed under chapter 66, relating to gaming contracts, securities, etc. Scates' Comp. 294.

This statute provides in the first section : " That all prom-
ises, notes, bills, bonds, covenants, contracts, agreements, judg-
ments, mortgages or other securities or conveyances, made,
given, granted, drawn or entered into, or executed by any per-
son or persons whatsoever, when the whole or any part of the
consideration thereof shall be for any money, property, or other
valuable thing, won by any gaming, or playing at cards, dice
or any other game or games, or by betting on the side or hands
of any person gaming, or for the re-imbursing or paying any
money or property, knowingly lent or advanced, at the time and
place of such play, to any person or persons so gaming or bet-
ting, or that shall, during such play, so play or bet, shall be
void and of no effect."

Section three provides that : "All judgments, mortgages,
assurances, bonds, notes, bills, specialties, promises, covenants,
agreements, and other acts, deeds, securities or conveyances,
given, granted, drawn or executed contrary to the provisions
of this chapter, may be set aside and vacated by any court of
equity, upon bill filed for that purpose by the person so grant-
ing, giving, entering into or executing the same, or by his
executors or administrators, or by any creditor, heir, devisee,
purchaser, or other person interested therein ; or if a judgment,
the same may be set aside on motion of any person aforesaid,
on due notice thereof given."

Section four provides that : "No assignment of any bill,
note, bond, covenant, agreement, judgment, mortgage, or other
security or conveyance, as aforesaid, shall in any manner affect
the defense of the person giving, granting, drawing, entering
into or executing the same, or the remedies of any person
interested therein."

And by section five it is provided, that the party shall
be obliged to answer, under oath, any bill or proceeding com-
menced under the provisions of this chapter, and that the
party so answering shall be acquitted from any other punish-
ment, forfeiture or penalty which he might be liable to for
gambling.

This statute was evidently designed to strike at the root of

a vice, the indulgence of which more effectually demoralizes its victims than any other which can be named. A persistence in it, so changes the nature of the infatuated, that they no longer feel the common instincts of humanity, but become brutalized.

All our legislation has been with an earnest desire to put a stop to the vice, and it was thought the statute before us would go far to effect that object. What could be supposed more efficacious, than depriving the successful party of all right to recover money he may claim to have won in the pursuit? But it has not so proved. The defect is in our natures and in our training, and unless both be reformed by proper discipline and education, legislation cannot avail much to destroy the propensity.

The statute we are considering is very broad, and makes void, not voidable only, all contracts having their origin in gaming, and, in the proper interpretation and understanding of that law, it would seem to us to be entirely immaterial when or how the fact is made patent to the court.

It is contended here, that the defense would have availed if it had been set up in the action at law, but not having been so set up, a court of chancery cannot relieve.

We concur in the general doctrine always enforced in this court, that, when a party has a defense to an action at law known to him, and he fails to make it, no court can relieve him. But this case is peculiar. The statute declares all judgments obtained on a gambling contract may be set aside and vacated by any court of equity, upon bill filed for that purpose, by the person so granting, giving, entering into or executing the same, or by his executors or administrators; or by any creditor, heir, devisee, purchaser or other person interested; or, if a judgment, the same may be set aside on motion of any person so named, on due notice thereof given, and no assignment shall affect this right.

This provision takes all such cases out of the general rule, that a defense must be made at law, if action is brought on the gaming contract. We hold, application may be made, in the

spirit of this law, in the first instance, to a court of equity, and it would be absurd to say that such a court cannot do, under the terms of this law, by bill regularly filed, containing all proper averments, what the court on a mere motion could do.

Great reliance is placed on the case of *Abrams et al.* v. *Camp*, 3 Scam. 290, where, under this same law, this court held, that relief in such case would not be granted against a judgment at law, when a party permitted a judgment to pass against him, without setting up his defense. We cannot receive this as the rule in cases arising under this statute. That is *sui generis*, and provides for special cases, and must be executed with reference alone to itself, and under it, we are free to say, that, neglecting to set up the statute at law, does not preclude a party claiming the benefit from a resort to chancery for relief. It was the intention of the legislature to make all judgments, like the contracts on which they were founded, absolutely void — of no vitality, and they cannot be vitalized by the action of any court.

We cannot subscribe to the doctrine of *Abrams* v. *Camp*, and, though the maxim *stare decisis* is most valuable in the law and in judicial proceedings, the higher behests of the legislature must have precedence and controlling power.

The relief sought should have been granted by the Circuit Court. For failing to grant it, and dismissing complainant's bill, the decree must be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*