## William S. Pope v. Joseph Hanke.

1. GAMBLING CONTRACT—*Notes Given Upon, Void.*—A promissory note given for a consideration based upon a criminal and prohibited contract, is void.

2. PROMISSORY NOTES—*Void Where Made, Void Everywhere.*—A promissory note, void by the law of the State where it is made, will be held void by the courts in which suit is brought to recover thereon.

3. PROMISSORY NOTES—*When Void in the Hands of an Assignee Before Maturity.*—A promissory note based upon a gambling contract, and void by the laws of the State where it is made, does not become valid and binding in the hands of an assignee before maturity.

4. VOID INSTRUMENTS—*Effect of an Assignment, etc.*—A void instrument can not be given validity by assigning it. And while such assignment may not be entirely without operation between the parties to it, yet the void instrument can never itself be made the basis of a recovery at law or in equity.

5. CONTRACTS—*Lex Loci Contractu, Lex Fori.*—There are many cases in which comity requires the application of the *lex loci contractu* and the enforcing of the terms of a contract, although in contravention of the policy of the *lex fori.* But this rule is never adopted in this State when it would contravene our criminal law, or sanction vice or immorality, or is against a positive prohibition of our law.

6. GAMBLING CONTRACTS—*Void by the Law of the State Where Made.*—When the transactions of parties in a sister State are criminal, and prohibited by the laws of that State, and also criminal by the laws of this State as gambling contracts and void, a note given for a con-

sideration based thereon is also void, even in the hands of an assignee before maturity.

**Memorandum.**—Assumpsit. Appeal from the Circuit Court of Clinton County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

HENRY D. LAUGHLIN, R. C. LAMBE and M. P. MURRAY, attorneys for appellant.

APPELLEE'S BRIEF, VAN HOOREBEKE & FORD, ATTORNEYS.

A contract against public policy will not be enforced anywhere. We think the following authorities fully sustain this position. Beveridge v. Hewitt, 8 Brad. 467; Cothran v. Ellis, 125 Ill. 496; Irwin v. Williar, 110 U. S. 499.

If a contract is valid where made, yet if against public policy or repugnant to the policy or positive institutions of the State where suit is brought, it will not be enforced. Phinney v. Baldwin, 16 Ill. 108; Chewning v. Johnson, 5 La. Ann. 678; Greenwood v. Curtin, 6 Mass. 358, 377; Kent Com. (7th Ed.) Vol. 2, top p. 567, 570, 571; Story's Conflict of Laws, Secs. 29, 38 and 327; Mumford v. Canty, 50 Ill. 375.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

Joseph Hanke executed three notes in the State of Missouri, dated October 1, 1890, payable to D. P. Grier Grain Co., of St. Louis, Mo., and delivered the same to the payee, each bearing interest from date at the rate of seven per cent. per annum. One of said notes was for $3,768.68, due in two months; one for $2,556.43, due in four months, and one for $2,556.42, due in six months. These notes were assigned before maturity by payee to William S. Pope, who brought this suit to recover the amount alleged to be due him thereon. The cause was tried by the court by agreement, and a finding and judgment for defendant resulted.

These notes were given to D. P. Grier Grain Co., to set-

Pope v. Hanke.

tle certain grain transactions on the board of trade in St. Louis, and they represent a portion of the losses of Hanke in those transactions. The special pleas set up in defense, first, that the notes were given in settlement of amount claimed by said D. P. Grier Co. to be due from defendant upon a gaming contract, whereby said company gave defendant an option to buy and sell certain wheat and corn—which defendant did not intend to deliver, nor the company intend to receive—the said notes being given to pay said company the difference between the market price on day of settlement, and the price at which defendant took said option; that the foregoing gaming contract was the sole consideration of said notes, and said notes were void under the statute. Second special plea sets up substantially the same facts, but avers the gaming contract was made in Missouri, and under the statute of that State said notes are wholly void. Sets up and relies on said statute as a bar to the recovery. Replications to the special pleas were, first, that the notes were sold and assigned to plaintiff for value, before maturity, without notice of defect or illegality of consideration, all in the State of Missouri, and are by the laws of that State in the hands of plaintiff valid and binding obligations; second, that the cause of action is founded upon a legal, valid and just consideration, and not upon a gaming contract. Issue was joined on these replications.

There was ample evidence to warrant the court in finding the notes were given in settlement of differences under option deals between the Grier Grain Co. and Hanke, as averred in the pleas. He testifies to that fact, and there is abundant evidence in the record corroborating him, the account rendered to Hanke by the grain company showing the amount and character of the transactions between them from July 19 to October 29, 1890, upon which the settlement was made, and for the balance claimed to be due, as therein stated, said notes were given, consisting almost entirely of items of cash paid by Hanke, and items of "loss" and "gain;" to illustrate, we insert the following copy of a part of said account introduced in evidence:

### EXHIBIT I.

Joseph Hanke, Esq., Trenton, Ills., in account with D. P. Grier Grain Co.

| | | |
|---|---|---:|
| July 19. | To loss 100 Aug. wheat............. $ | 56.25 |
| " 25. | To loss 50 Sept. corn............... | 337.50 |
| " 25. | To loss 30 Dec. wheat.............. | 731.25 |
| " 26. | To cash........................... | 500.00 |
| " 28. | To loss, 5 Dec. wheat.............. | 3.12 |
| " 28. | To cash........................... | 300.00 |
| " 29. | To loss, 20 Dec. wheat............. | 162.50 |
| Aug. 1. | To loss, 75 Dec. wheat............. | 1,990.63 |
| " 7. | To loss, 25 Dec. wheat............. | 15.63 |
| " 14. | To loss, 145 Sept. corn............. | 4,146,87 |
| " 15. | To loss, 5 Sept. corn............... | 178.13 |
| " 16. | To loss, 25 Dec. wheat............. | 140.62 |
| " 19. | To loss, 100 Dec. wheat............ | 225.00 |
| " 19. | To loss, 75 Sept. corn.............. | 1,653.13 |
| " 21. | To loss, 100 Dec. wheat........... | 281.25 |
| " 21. | To loss, 35 Sept. corn............. | 915.63 |
| " 21. | To loss, 150 May corn:............. | 31.25 |
| " 26. | To loss, 125 Dec. wheat............ | 1,709.38 |
| July 12. | By cash, cr....................... | 500.00 |
| " 14. | By gain, 50 Sept. corn............. | 375.00 |
| " 17. | By gain, 70 Sept. corn............. | 512.50 |
| " 22. | By gain, 25 Aug. wheat............ | 31.25 |
| " 23. | Rebate com., 25 Aug. wheat........ | 15.62 |
| " 23. | By gain, 25 Sept. corn............. | 109.38 |
| " 23. | By gain, 50 Sept. corn............. | 156.25 |
| " 24. | By gain, 75 Aug. wheat............ | 203.13 |
| " 24. | By gain, 25 Aug. corn............. | 265.62 |
| " 28. | By gain, 20 Sept. corn............. | 43.75 |
| " 28. | By gain, 20 Sept. corn............. | 231.25 |
| " 29. | By gain, 5 Sept. corn.............. | 53.13 |
| " 29. | By gain, 25 Sept. corn............. | 115,62 |
| " 30. | By gain, 80 Sept. corn............. | 731.25 |
| " 31. | By cash put....................... | 210.00 |
| " 31. | By cr. in......................... | 6.25 |
| Aug. 1. | By cash .......................... | 225.00 |

Pope v. Hanke.

| Aug. | 1. | By gain, 25 Sept. corn............... $ | 109.38 |
|------|-----|-----------------------------------------|---------|
| "    | 2. | By gain, 125 Sept. corn.............. | 553.12 |
| "    | 2. | By cash............................. | 195.00 |
| "    | 4. | By cash............................. | 305.00 |
| "    | 5. | By gain, 50 Dec. wheat.............. | 562.50 |
| "    | 6. | By cash............................. | 150.00 |
| "    | 7. | By gain, 75 Sept. corn.............. | 84.37 |
| "    | 7. | By cash............................. | 150.00 |
| "    | 9. | By gain, 50 Dec. wheat.............. | 537.50 |
| "    | 9. | By cash............................. | 10.00 |
| "    | 9. | By cash............................. | 80.00 |
| "    | 9. | By cash............................. | 800.00 |
| "    | 9. | By cash............................. | 140.00 |
| "    | 11. | By cash............................ | 50.00 |
| "    | 11. | By gain, 75 Dec. wheat............. | 1,390.63 |
| "    | 11. | By gain, 20 Sept. corn............. | 237.50 |

Hanke also testified : " The three notes sued on were given for a balance for options.   I had bought grain, and grain fell in value in St. Louis, and the three notes made the difference that I was behind in the deals."   That during the period of three months and. ten days these option deals covered  2,190,000  bushels of  wheat, 1,420,000  bushels of corn and 60,000 bushels of oats.   None of the grain traded in was delivered or offered to be delivered.   Curry, secretary of the grain company, substantially admits the transactions set out in the account rendered were as Hanke stated, and also says : " Hanke's name was never disclosed as a principal in the transactions," nor does it appear he was informed who the persons were from whom the grain was claimed to have been purchased.   Without lengthening this opinion by detailing here at length the evidence introduced, it is sufficient to say we are satisfied the transactions between Hanke and the D. P. Grier Grain Co., were gambling contracts and void in the State of Missouri at the time they were made.   The statute of Missouri, Rev. Stat. 1889, read in evidence, provides, Sec. 3931, that all purchases and sales, or pretended purchases and sales, or contracts for the purchase and sale of grain and other named articles, either

on margin or otherwise, without intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying and selling, or pretended buying and selling of such property on margins or optional delivery when the party selling the same or offering to sell the same does not intend to have the full amount of the property on hand, or under his control, to deliver upon such sale, or when the party buying any of such property, or offering to buy the same, does not intend actually to receive the full amount of the same if purchased, are declared to be gambling and unlawful, and are prohibited. The penalty prescribed for a violation of said provisions is a fine not less than $300, nor more than $3,000. Sec. 3932, provides: It shall not be necessary to constitute the offense defined in Sec. 3931, that both buyer and seller agree to do any of the acts prohibited in said section. But the offense is complete against the party thus pretending, or offering to sell, or buy, whether such offer is accepted or not. Sec. 3936 makes all contracts made in violation of this act, gambling contracts, and void.

The foregoing statutory provisions were in force when the deals in grain options were made between Hanke and the Grier Grain Co., in the State of Missouri, and as we understand the evidence, those transactions were gambling contracts, and void within the meaning of that act, and the notes given for a consideration based upon such criminal and prohibited contracts are also void, and no authority need be cited in support of the proposition that if they are void in Missouri, the place of the contract, they will be held void by the courts in which suit is brought to recover thereon.

It is insisted, however, on behalf of appellant, that if the notes were void in the hands of the original payee, they became valid by assignment for value to appellant before maturity. To so hold would aid in defeating the purpose designed to be accomplished by wise legislation, viz., the suppression of a species of gambling, quite as extensive in its operations, pernicious in its influences, and ruinous in the consequences to its votaries, as any other kind of gaming,

and we can not hold that a note which is the offspring of criminal acts, and for that reason is a void instrument in the hands of the original payee, a participant in the criminal acts, becomes valid and binding when assigned by him, and he be thus permitted indirectly to collect unlawful gains in defiance of the statute. Such is not the law in this State. Notes given for money won at gaming are held absolutely void even in the hands of an assignee before maturity. Williams v. Judy, 3 Gil. 282; Madert v. Butcher, 41 Ill. 382. And it is said in County of Cook v. Lane, 23 App. Ct. Rep. 649, a void instrument can not be given validity by assigning it. And while such assignment may not be entirely without operation between the parties to it, yet the void instrument can never itself be made the basis of a recovery at law or in equity.

In the case of Tenny et al. v. Foote, 4 Brad. 594, the suit was brought by the assignee, before maturity, of a note given in settlement of option deals, as were the notes in the case at bar, and the opinion of Judge McAllister, who tried the case in the Circuit Court, was adopted as the opinion of the Appellate Court. In that opinion it is said: " It is immaterial whether plaintiffs be *bona fide* holders of the note or not, if the contract between Hooker & Co. and Foote was a gambling contract, and within the statute against gambling, because the statute itself renders void all contracts, notes, bills or other securities, where the whole or any part of the consideration arises out of a gambling transaction; " and the judgment for defendant was affirmed. The cause was then taken to the Supreme Court and judgment affirmed. It is reported in 95 Ill. 99, and in the opinion it is said : " We may add, in conclusion, we see no objection to the law as announced in the opinion adopted by the Appellate Court, and written by the circuit judge, who was formerly a distinguished member of this court." It is also insisted on behalf of appellant that the notes sued on were Missouri contracts, and the courts of this State will ascertain the rights of the parties according to the laws of that State, and enforce them. Several cases decided in Mis-

souri are cited to show the rule held was that a note given for like consideration as those in this case, was valid in the hands of an innocent assignee. The cases cited were decided before the Missouri statute of 1889 was enacted, and in addition to that, as a reply to such contention it appears, as before shown, that the rule held by our Supreme Court is directly to the contrary. There are many cases in which comity requires the application of the *lex loci contractu* and the enforcing of the terms of a contract, although in contravention of the policy of the *lex fori*. But this rule is never adopted in this State, when thereby it would contravene our criminal law, or sanction vice, or immorality, or is against a positive prohibition of our law. By the provisions of Sec. 130 of our Criminal Code and under the decisions of our Appellate and Supreme Court, the transactions between the Grier Grain Co. and Hanke must be held to be criminal acts, prohibited by our law, defined as gambling contracts and void, and the note given for a consideration based thereon, must also be held void in the hands of appellant.

The case at bar, therefore, is one of the excepted cases in which comity does not require us to adopt the rule announced in the Missouri cases, even if we held that those decisions were the law in Missouri at the time these notes were executed, which we do not. The motion to tax costs for additional abstract, which was reserved to be passed on when the cause should be finally decided, is overruled.

The judgment is affirmed.