**Thomas Mulcahey, Appellee, v. Michael L. Vehon and
Charles N. Knox, Appellants.**

**Gen. No. 27,979.**

1. FORMER ADJUDICATION—*when judgment on gambling contract
not res adjudicata on bill to vacate.* A judgment at law against the
maker of a promissory note given on a gambling contract in grain
futures is void under Criminal Code, Cahill's Ill. St. ch. 38, ¶ 309,
so providing and may be vacated and set aside in equity under
paragraph 313, as against a plea of *res adjudicata* based on the fact
that the defense was raised by the maker by special plea and that
the judgment was rendered after a verdict by the jury, where it is
alleged in the bill to vacate the judgment, and not denied in the
plea setting up the defense of *res adjudicata,* that the maker of the

note had no notice or knowledge of the time of trial and was not present in court or represented and that no evidence was offered by him or in his behalf, and it is not shown that the defense of gambling transaction was in fact adjudicated or tried.

2. FORMER ADJUDICATION—*when defense that consideration for note sued was gambling transaction not necessarily involved.* A judgment against the maker of a note given for a gambling transaction is not *res adjudicata* in a suit to vacate the judgment on the ground that the judgment is void because based on a gambling consideration, on the ground that the action at law must necessarily have involved the determination of the question whether the consideration was won by gaming or not, where the record of the action shows that the maker was not present at the trial and that no evidence was introduced by him or in his behalf, even though he raised the defense by a special plea to the declaration, since in such case plaintiff was entitled to judgment on the note alone without offering evidence on the plea.

3. FORMER ADJUDICATION—*exception of judgment on gambling contract from rule of res adjudicata not limited to judgment by default or confession.* The provisions of Criminal Code, Cahill's Ill. St. ch. 38, ¶ 309, that all "judgments * * * made, given, granted, drawn or entered into, or executed by any person whatsoever" shall be void if based on a gambling consideration do not limit the application of paragraph 313, providing that such judgments may be vacated and set aside in equity, to judgments by confession or default so as to render an adversary judgment against the maker of a promissory note for a gambling consideration *res adjudicata* on a bill to set it aside.

4. VENUE—*"consent" and not want of "objection" of all codefendants requisite to change.* It was not error to deny a change of venue on the petition of one of two codefendants where the other defendant did not join in the petition or actively consent thereto but filed a certificate that he had "no objection" to the change being granted, since under the statute providing for change of venue, Cahill's Ill. St. ch. 146, ¶ 9, a change shall not be granted where there are two or more parties unless made by or with the "consent" of all such parties.

Appeal by defendants from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed May 28, 1923. *Certiorari* denied by Supreme Court (making opinion final).

LEVINSON & HOFFMAN, for appellants; HARRY C. LEVINSON and BEN ROTHBAUM, of counsel.

Beach & Beach and Alfred A. Johnson, for appellee.

Mr. Justice Johnston delivered the opinion of the court.

A bill of complaint was filed in this cause by Thomas Mulcahey, appellee, to vacate and set aside certain judgments obtained against appellee by Michael Vehon, appellant, and to enjoin the collection of the judgments by the sheriff of Vermilion county. Charles N. Knox, appellant, on the ground that the judgments were obtained on a note given in consideration of a gambling transaction involving the future differences in the price of grain, and that, therefore, the judgments were void within the meaning of section 131, chapter 38 of the Statute of the Criminal Code of Illinois relating to "Gambling and Gambling Contracts," and could be vacated in equity under section 135 of the statute. [Cahill's Ill. St. ch. 38, ¶¶ 309, 313.]

The substance of the bill of complaint is as follows: The first judgment obtained against appellee was by confession in the sum of $1,339.52. On the filing of an affidavit by appellee stating that the note was given in consideration of a gambling contract, the judgment was suspended, and appellee was granted leave to plead. He thereupon filed a plea of general issue and a special plea. He alleged in the special plea "that the sole and only consideration" of the note upon which suit was brought was given for money lost in gambling upon the market price of grain, and in buying and selling options in which it was understood by both the appellee and appellant Vehon that neither was to receive or deliver the grain bought or sold, but that the loss or gain resulting from such transactions should be settled by payment of the difference between the price agreed upon and the market value of the grain at the time of delivery.

(It appears from the record, although not alleged in the bill, that the case was submitted to a jury and that a verdict was returned in favor of appellant Vehon in the sum of $1,339.52. The judgment entered upon the verdict was that the first judgment should stand in full force and effect.) In an amendment to the bill, appellee alleges "that he received no notice and had no knowledge of the day upon which said trial was to be had, and was not present in court when said cause was tried, and no evidence was offered by him or on his behalf in defense of said action at law, and he never knew or was advised that a judgment had been rendered against him in said cause until he was served by a deputy sheriff of the County of Vermilion with execution issued on such judgment." The bill sets forth in detail the facts which it is alleged constitute the gambling transaction for which the note was given on which the verdict and judgment were rendered. To the bill and amended bill appellants filed a general demurrer. The demurrer was overruled and appellants were ruled to plead or answer. Appellants filed a plea of *res adjudicata*. In the plea, among other things, it is alleged that in the action at law after appellee pleaded to appellants' declaration, filing thereto a plea of the general issue and a special plea averring that the note was given in consideration of a gambling transaction, "said cause was afterwards set down for hearing on said pleadings and issues joined as aforesaid; that on February 8, 1922, said cause was reached on the trial call of Judge Hebel of this court, a jury was regularly impaneled, sworn and accepted to try said cause and hearing was duly had on the pleadings and issues joined in said cause and said jury thereupon returned a verdict, being in words and figures as follows: 'We, the jury, find the issues for the plaintiff.' That thereupon the judgment of this court was rendered upon said verdict that the judgment entered April 19, A. D. 1919, for thirteen

hundred thirty-nine dollars and fifty-two cents ($1,339.52) to stand in full force and effect.''

Vehon, one of the appellants, filed a petition for a change of venue, which was denied. A second petition for a change of venue was filed by appellant Vehon. Appellant Knox did not join in the petition, but filed a certificate in which he stated that he had ''no objection to said change of venue being granted.'' The second petition for a change of venue was denied. A hearing was had on appellants' bill of complaint and appellee's plea of *res adjudicata* and the plea was overruled. Appellants elected to stand by the plea, and a final decree was entered enjoining the collection of the judgments.

The two principal errors assigned by counsel for appellants are: First, that the court erred in overruling the plea of *res adjudicata;* second, that the court erred in denying the second change of venue.

Sections 131 and 135 of the statute in the Criminal Code relating to ''Gambling and Gambling Contracts'' are the sections of the statute involved in the consideration of the objection on *res adjudicata.* [Cahill's Ill. St. ch. 38, ¶¶ 309, 313.] Section 131 is as follows:

''All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof, shall be for any money, property or other valuable thing, won by any gaming, or playing at cards, dice, or any other game or games, or by betting on the side or hands of any person gaming, or by wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, or for the reimbursing or paying any money or property knowingly lent or advanced at the time and place of such play or bet, to any person or persons so gaming or betting, or that shall,

during such play or betting, so play or bet, shall be void and of no effect.''

Section 135 is as follows:

''All judgments, mortgages, assurances, bonds, notes, bills, specialties, promises, covenants, agreements, and other acts, deeds, securities, or conveyances, given, granted, drawn or executed, contrary to the provisions of this act, may be set aside and vacated by any court of equity, upon bill filed for that purpose, by the person so granting, giving, entering into, or executing the same, or by his executors or administrators, or by any creditor, heir, devisee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person aforesaid, on due notice thereof given.''

On the question of *res adjudicata* counsel for appellants contend that the special plea of appellee, in the action at law, alleging that the note was given in consideration of a gambling contract, raised the issue on the trial before the jury as to whether the transaction was void under section 131, chapter 38 of the Criminal Code; that the verdict of the jury was adverse to the appellee, and that the issue on the plea was necessarily involved in the verdict of the jury; that the judgment on the verdict is a conclusive adjudication of the issue; and that on the doctrine of *res adjudicata* the issue cannot be litigated in any subsequent proceeding either at law or in equity.

In support of their contention counsel for appellants cite a number of decisions of the Supreme Court of this State holding, in substance, that a judgment or decree is not only conclusive as to questions actually and formally litigated, but that it is conclusive as to all questions within the issue whether formally litigated or not; and extends not only to the questions of fact and of law which were decided in the former suit, but also to the grounds of recovery or defense, which might have been, but were not presented.

If the present case was not one arising on the statute of the Criminal Code of this State relating to

"Gambling and Gambling Contracts," the decisions relied on by counsel for appellants might apply. But it has been held by the Supreme Court of this State, and also by the Supreme Court of the United States, that the statute takes judgments based on gambling contracts out of the general rule of. *res adjudicata.*

Counsel for appellants argue that there is not a single case in this State which holds that a judgment "based upon a consideration won by gaming * * * is an exception to the general rule of *res adjudicata"*; and that they also maintain that "the Supreme Court of the United States has held (*Pearce v. Rice,* 142 U. S. 28) that the *very* Illinois cases cited by complainant do not make any such exception; that no statute in this State makes an exception to the rule of *res adjudicata.*"

Counsel for appellants are in error in the above contentions.

The case of *West v. Carter,* 129 Ill. 249, 254, in considering section 135 of the statute relating to "Gambling and Gambling Contracts," held as follows (p. 254):

"It can make no difference that a *defense was or might have been made* in the suit at law to recover judgment on the illegal contract. The rule in equity, that courts of chancery will not take jurisdiction where there is an adequate remedy at law, must yield to the requirements of this statute, that relief may be granted in a court of equity to vacate and set aside judgments and contracts obtained in violation of this provision * * *."

In *Harris v. McDonald,* 194 Ill. 75, citing *Mallett v. Butcher,* 41 Ill. 382; *Lucas v. Nichols,* 66 Ill. 41; *West v. Carter, supra,* as authorities, the court said (p. 80):

"It is not a sufficient defense to the bill to prove that the complainant *appeared and defended* in the suit at law in which the judgment was rendered, *it appearing* that the illegality of the contract, under the statute alleged in the bill as ground for relief, *was not* set up or *adjudicated* in the action at law."

In *Pearce v. Rice,* 142 U. S. 28, 35, 36, where the Illinois statute of the Criminal Code relating to "Gambling and Gambling Contracts" was involved, the Supreme Court of the United States, in consider-ing the general rule of *res adjudicata,* and also the general rule of equity in regard to restraining a judg-ment at law, said (pp. 35, 36):

"The appellant invokes the general rule that a judgment is final and conclusive, in any subsequent suit, between the same parties or their privies, as to all matters actually determined, or which were neces-sarily involved, in the first suit; also, the rule, recog-nized in the courts of the United States, that equity will not, at the instance of one against whom a judg-ment at law has been rendered, restrain the operation or effect of that judgment, unless there be equitable circumstances justifying its interference, or unless such person was prevented by fraud or accident, un-mixed with fault or negligence upon his part, from making full defense at law.

"The courts of Illinois have not regarded these rules as strictly applicable in cases under the law re-lating to gaming and gambling contracts."

The authorities above cited establish the law in this State that cases arising on the statute of the Crim-inal Code relating to "Gambling and Gambling Con-tracts" constitute an exception to the general rule of *res adjudicata.*

Counsel for appellants contend that the language of the court in *West v. Carter, supra,* which stated that: "It can make no difference that a defense was or might have been made in the suit at law to recover judgment upon the illegal contract," was a dictum and "in no way necessary to the decision of that case." It is true that the statement of the court was not essential to the disposition of the case, but it was a deliberate expression of the court and not a casual or incidental utterance of the judge who wrote the opinion. It was rather a "judicial dictum" than a mere *obiter dictum. Rhoads v. Chicago & A. R. Co.,*

227 Ill. 328, 337. Furthermore, the case of *West v. Carter, supra,* has been cited with approval and accepted as the law in numerous cases in this State. It is not necessary, however, in the present case to invoke the rule announced in the dictum in *West v. Carter, supra,* as the record in the present case shows that no defense was actually made in the action at law.

In addition to the rule that the general doctrine of *res adjudicata* is not strictly applicable to judgments obtained on gambling contracts, it has been held in this State that under section 135 of the statute, such judgments constitute an exception to the general rule that where there is an adequate defense at law, equity will not grant relief if the defense was not made.

In *Mallett v. Butcher,* 41 Ill. 382, 384, 385, it was held that the statute "takes all such·cases out of the general rule that a defense must be made at law, if action is brought on the gambling contract"; that the statute is *"sui generis* and provides for special cases, and must be executed with reference alone to itself."

In the case of *Lucas v. Nichols,* 66 Ill. 41, 42, citing *Mallett v. Butcher, supra,* the court held that:

"Under the stringent language of our statute prohibiting gambling at cards or other games, the rule that chancery would not relieve against a judgment rendered upon a note given for money won in gaming, where the complainant had had an opportunity to make his defense at law, and had failed to do so, was inapplicable."

In *Harris v. McDonald, supra,* after citing *Mallett v. Butcher, supra; Lucas v. Nichols, supra; West v. Carter, supra,* the court said (p. 80):

"In these cases it was held that this statute takes cases of this character out of the general rule that a defense must be made at law if action is brought on the gaming contract."

In *Boddie v. Brewer & Hofmann Brewing Co.,* 204 Ill. 352, 355, in considering the cases of *West v. Carter, supra,* and *Mallett v. Butcher, supra,* the court said (p. 355):

"In the cases above referred to, the general doctrine is recognized that where a party has a defense to an action at law and he fails to make it or fails to bring forward his entire defense, a court of equity will not relieve him, but it is said cases falling within the statute passed for the purpose of prohibiting gambling are, by force of section 135 of that statute, taken out of the general rule."

The case of *Butler v. Nohe,* 98 Ill. App. 624, 628, cited *West v. Carter, supra,* and *Mallett v. Butcher, supra,* and quoted from the latter case in respect to the statute as follows (p. 628):

"This provision takes all such cases out of the general rule, that a defense must be made at law, if action is brought on a gaming contract."

The rule in this State governing the cases arising on the statute of the Criminal Code relating to "Gambling and Gambling Contracts" was announced in *Mallett v. Butcher, supra,* and *West v. Carter, supra,* and has been followed and adhered to in decisions both of the Supreme and the Appellate Courts.

In *Mallett v. Butcher, supra,* the court said (pp. 384, 385):

"The statute we are considering is very broad and makes void, not voidable only, all contracts having their origin in gaming, and, in the proper interpretation and understanding of that law, it would seem to us to be entirely immaterial when or how the fact is made patent to the court.   It is contended here, that the defense would have availed if it had been set up in the action at law, but not having been so set up, a court of chancery cannot relieve.   We concur in the general doctrine always enforced in this court, that, when a party has a defense to an action at law known to him, and he fails to make it, no court can relieve him.   But this case is peculiar.   The statute declares all judgments obtained on a gambling contract may be set aside and vacated by any court of equity, upon bill filed for that purpose  *  *  *.   This provision takes all such cases out of the general rule, that a defense must be made at law, if action is

brought on the gaming contract. * * * Great reliance is placed on the case of *Abrams v. Camp,* 3 Scam. 290, where, under this same law, this court held that relief in such case would not be granted against a judgment at law, when a party permitted a judgment to pass against him, without setting up his defense. We cannot receive this as the rule in cases arising under this statute. That is *sui generis,* and provides for special cases, and must be executed with reference alone to itself, and under it, we are free to say, that, neglecting to set up the statute at law, does not preclude a party claiming the benefit from a resort to chancery for relief. It was the intention of the legislature to make all judgments, like the contracts on which they were founded, absolutely void— of no vitality, and they cannot be vitalized by the action of any court * * *.''

In *West v. Carter, supra,* the court said (p. 254):
''Where a judgment had been obtained at law upon a promissory note given for money won at gambling, it was held, upon bill filed by the maker under section 135 of the Act, that the judgment was void, and it was accordingly set aside. (*Mallett v. Butcher,* 41 Ill. 382.) It was there said: 'It was the intention of the legislature to make all judgments, like the contracts on which they are founded, absolutely void, —of no vitality,—and they cannot be vitalized by the action of any court.' This being so, it can make no difference that a defense was or might have been made in the suit at law to recover judgment upon the illegal contract. The rule in equity, that courts of chancery will not take jurisdiction where there is an adequate defense or remedy at law, must yield to the requirements of this statute, that relief may be granted in a court of equity to vacate and set aside judgments and contracts obtained in violation of this provision; and it was so held in the case last cited, overruling *Abrams v. Camp,* 3 Scam. 290.''

The cases of *Mallett v. Butcher, supra,* and *West v. Carter, supra,* are leading cases, and have been cited with approval in *Lucas v. Nichols, supra; Harris v. McDonald, supra; Boddie v. Brewer & Hofmann*

Mulcahey v. Vehon et al., 229 Ill. App. 454.

*Brewing Co., supra; Butler v. Nohe, supra; Patterson v. Scott,* 142 Ill. 138, 139; *Vennum v. Carr,* 130 Ill. App. 309, 312; *Chicago Driving Park v. West,* 35 Ill. App. 496, 499; *Pope v. Hanke,* 52 Ill. App. 453, 459.

The question now to be determined is whether the present case constitutes an exception to the general rule. On the record it is not necessary to consider the question whether, if appellee had *appeared in court* in the action at law, and had actually made a *full and fair defense* on his plea that his note was void within the meaning of section 131 of the Criminal Code, a judgment against him could be vacated by a suit in equity. It appears from the record that appellee was not present in court and did not make an actual defense at the trial in the action at law. If, therefore, in this state of the record, it can be said that in the action at law the issue on appellee's plea was not *in fact adjudicated* or *fully and fairly tried,* the present case is taken out of the general rule, and is governed by the law announced in *Mallett v. Butcher, supra,* and *West v. Carter, supra.*

In *Harris v. McDonald, supra,* it was held on the authority of *Mallett v. Butcher, supra,* and *West v. Carter, supra,* that even though there was an appearance and defense made in the action at law, this would not constitute a sufficient defense to a bill in equity, if the illegal contract was not "adjudicated in the action at law."

In construing the cases of *Mallett v. Butcher, supra,* and *West v. Carter, supra,* the Supreme Court of the United States in *Pearce v. Rice, supra,* held (p. 37) that one of the judgments which the statute permits to be vacated upon bill in equity is a judgment rendered without a direct issue "fully and fairly tried."

Was the issue in the present case in fact adjudicated or "fully and fairly tried" in the action at law? What are the facts in the record relating to this inquiry?

Appellee alleges in his bill of complaint as follows:

"This complainant further says that he received no notice and had no knowledge of the day upon which said trial was to be had, and was not present in court when said cause was tried, and no evidence was offered by him or on his behalf in defense of said action at law, and he never knew or was advised that a judgment had been rendered against him in said cause until he was served by a deputy sheriff of the County of Vermilion with execution issued on such judgment."

Appellants' plea of *res adjudicata* to the bill of complaint does not expressly or impliedly deny the allegations of the bill that appellee "was not present in court" when the action at law was tried, and that "no evidence was offered by him or on his behalf in defense of said action at law." In regard to the action at law, appellants in their plea of *res adjudicata* make the following allegations:

"Said cause was afterwards set down for hearing on said pleadings and issues joined as aforesaid; that on February 8, 1922, said cause was reached on the trial call of Judge Hebel of this court, a jury was regularly impaneled, sworn and accepted to try said cause and hearing was duly had on the pleadings and issues joined in said cause and said jury thereupon returned a verdict, being in words and figures as follows: 'We, the jury, find the issues for the Plaintiff.' That thereupon the judgment of this court was rendered upon said verdict that the judgment entered April 19, A. D. 1919, for thirteen hundred thirty-nine dollars and fifty-two cents ($1,339.52) to stand in full force and effect."

The above-quoted allegations of appellants are not either express or implied denials of the averments of appellee that he was not present and that no evidence was offered by him or on his behalf. On the record, therefore, it must be taken as admitted that the allegations of appellee are true.

Counsel for appellants argue that the verdict and judgment at law "must necessarily have involved the

determination of the question whether the consideration was won by gaming or not." In our opinion that is not a correct contention, as it appears from the record that the issue on the plea was not *necessarily* involved. In the absence of a defense by appellee, appellant Vehon was entitled to a verdict and a judgment merely on the note alone, without offering any evidence whatever on the plea of appellee.

Counsel for appellants both in their brief and reply brief insist that the case of *Pearce v. Rice, supra,* supports their contention that the plea of *res adjudicata* should have been sustained. They argue in their brief as follows: "Under no reasonable construction of said statute can it be held to mean that the collection of a judgment may be enjoined on the ground that it is based upon consideration won at gambling, if a court having jurisdiction of the parties and subject-matter to whom said issue was presented decided that the indebtedness was not based upon consideration won at gambling, but was based on a consideration that was valid and legal. No less an authority than the Supreme Court of the United States has so held, in interpreting this section of the Illinois statutes in the case of *Pearce v. Rice,* 142 U. S. 28''; and "no less an authority than the Supreme Court of the United States in *Pearce v. Rice,* 142 U. S. 28 (cited in brief for appellants), has held that neither *West v. Carter,* 129 Ill. 249, nor *Mallett v. Butcher,* 41 Ill. 382, stand for any such proposition."

We do not think that the position of counsel for appellants is correct. The language in *Pearce v. Rice, supra,* which counsel for appellants maintain supports their contention, is quoted by them as follows:

"These cases (referring to *Mallett v. Butcher,* 41 Ill. 382, and *West v. Carter,* 129 Ill. 249), in effect, decide that the judgments which the statute permits to be vacated, upon bill in equity or motion, embrace those on confession, as well as those rendered upon default, or without a direct issue, fully and fairly

tried, between proper parties. It is consistent with those cases to hold—*as upon any sound interpretation of the statute,* and in obedience to the principles of equity obtaining in the courts of the United States, we must hold—that Foote's liability upon his guaranty of the Couch notes was, as between the bank and him, fixed by *the judgment upon the direct issue in the suit at law,* as to such liability, and which judgment has not been modified or reversed."

The error of the contentions of counsel in construing the above language in *Pearce v. Rice, supra,* arises from counsel's incorrect assumption that the record in the present case shows that the court, in the action at law, *decided* that "the indebtedness was not based upon consideration won at gambling, but was based on a consideration that was valid and legal." The record in the present case does not show that the court so decided in the action at law, or that this issue was *necessarily* involved in the judgment of the court. It is apparent, therefore, that counsel for appellants have construed the case of *Pearce v. Rice, supra,* as applying to a state of facts that does not exist on the record in the present case, but which was contained in the record of the case of *Pearce v. Rice, supra.* The question whether, if in the present case the court in the action at law had actually "decided that the indebtedness was not based upon consideration at gambling, but was based on a consideration that was valid and legal," the judgment of the court could be set aside and vacated in a suit in equity, is not involved on the record in the present case.

In our opinion the language of *Pearce v. Rice, supra,* relied on by counsel for appellants when considered in connection with the record in the present case, does not support the contention of counsel, but is contrary to their contention. The court hold in *Pearce v. Rice, supra,* that one of the judgments which the statute permits to be vacated upon bill in equity is a

judgment rendered "without a direct *issue fully and fairly tried* between the proper parties." Furthermore, in *Pearce v. Rice, supra,* Foote actually made a defense upon the direct issue in the action at law. We have shown by the record in the present case that appellee did not appear at the trial in the action at law and that no evidence was offered by him or on his behalf; that, therefore, the issue on appellee's plea was not "fully and fairly tried" in the action at law; and we have cited authorities holding that such a case constitutes an exception to the general rules of law and of equity.

Throughout their argument counsel for appellants have fallen into error in assuming that the present case does not constitute an exception to the general rules of law and equity, and have also misinterpreted the record in the case. Their argument incorrectly proceeds on the assumption that the judgment at law which was obtained by appellants is, on the general rule of *res adjudicata* recognized in this State, conclusive of all questions within the issue in the action at law, whether formally litigated or not, and extends to any defense which might have been presented; also, on the erroneous assumption that the record shows that the court decided, in the action at law, that the contract was valid and not illegal, and that, therefore, the doctrine of *res adjudicata* applies.

Counsel for appellants further contend in their reply brief that the words "made, given, granted, drawn or entered into, or executed by any person whatsoever" contained in section 131 of the statute, "have been considered by many courts as a very important part of similar and substantially the same statutes, and as limiting the kind of judgments to which the statute applied." The cases referred to by counsel are from other States. We presume from the decisions in those cases that counsel intend to argue that section 131 is limited, by the language quoted, to judg-

ments only which are voluntarily confessed. Such a contention is opposed to the decisions in this State. *Mallett v. Butcher, supra; West v. Carter, supra; Vennum v. Carr, supra; Butler v. Nohe, supra,* all hold that the judgments embraced within section 131 are not only judgments by confession and judgments by default, but also adversary judgments. In construing the cases of *Mallett v. Butcher, supra,* and *West v. Carter, supra,* the Supreme Court of the United States in *Pearce v. Rice, supra,* say (p. 37):

"These cases, in effect, decide that the judgments which the statute permits to be vacated upon bill in equity, or motion, embrace those on confession, as well as those rendered upon default, or without a direct issue, fully and fairly tried between proper parties."

We are of the opinion that the issue raised by the plea of appellee in the action at law that the note was given in consideration of a gambling contract within the meaning of section 131 of the Criminal Code was not "fully and fairly tried," and that therefore, appellants' plea of *res adjudicata* was properly overruled.

Counsel for appellants' remaining assignment of error is that the court erred in denying the second petition for a change of venue. Counsel contend that "the law is clear that the obligation of a judge to grant a change of venue to one who brings himself within the provisions of the statute is imperative." Counsel have correctly stated the law, and the precise question presented is, did appellants "bring themselves within the provisions of the statute?" Section 9 of chapter 146 [Cahill's Ill. St. ch. 146, ¶ 9] providing for a change of venue when there are several parties provides, in part, as follows:

"When there are two or more plaintiffs or defendants, a change of venue shall not be granted unless the application is made by or with the consent of all the parties, plaintiff or defendant, as the case may be * * *."

Was the second application ''made by or with the consent of all the parties'' within the meaning of the statute? There were two plaintiffs, Vehon and Knox. Vehon filed the petition. Knox filed a certificate in which he stated as follows:

''I, Charles N. Knox, sheriff of Vermilion County, State of Illinois, in the matter of the application of Michael L. Vehon for change of venue in the case of Thomas Mulcahey v. Harry C. Levinson, et al., No. 376,726, in the Superior Court of Cook County, Illinois, in which I am joined as a party defendant, do hereby certify that I have no objection to said change of venue being granted.''

Does this certificate constitute a ''consent'' on the part of Knox as contemplated by the statute? We are of the opinion that it does not. Giving consent and offering no objection are different acts. Consent is an active state of mind, and not objecting a passive one. In *Aull v. Columbia, N. & L. R. Co.,* 42 S. C. 431, 20 S. E. 302, 304, it was held that the word ''consent'' implies some positive action.

In the affairs of life it is customary to recognize a distinction between consenting and not objecting. One may not himself desire actually to consent to an action, and yet may not object to the action being taken by another.

Among the definitions given by the Century Dictionary for ''consent'' are the following: ''Acquiescence; concurrence; compliance; permission.'' Webster's New International Dictionary gives the above definitions and also the following: ''Voluntary accordance with, or concurrence in, what is done or proposed by another. *Law.* Capable, deliberate, and voluntary assent or agreement to, or concurrence in, some act or purpose, implying physical and mental power and free action.''

Some of the definitions given for the word ''objection'' by Webster's New International Dictionary are as follows: ''An opposing''; and ''That which is or may be presented in objection.''

From the above definitions it will be seen that there is a material difference between the two words. A concurrence in the action of another is different from opposing the action. One may agree not to oppose a certain action, and yet not thereby consent to or concur in it. In this view, the certificate of appellant Knox that he had "no objection to said change of Venue being granted" meant that he would not offer any opposition to the petition; but it did not mean that he consented to the filing of the petition in the sense of concurring in it or adopting it as his own. In other words, he said, in effect, that he would remain passive in the matter.

We are of the opinion that the court did not err in overruling the second petition for a change of venue.

*Judgment affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.