# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Faletti*, 2017 IL App (3d) 160323

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF DOMINIC J. FALETTI, JR., as Guardian of the Estate and Person of Dominic J. Faletti, Sr., a Disabled Adult, Petitioner-Appellee, v. THOMAS KASHER, as Guardian of the Estate of Virginia Faletti, and TERESA CONVERY, as Guardian of the Person of Virginia Faletti, a Disabled Adult, Respondents-Appellants. |
| District & No. | Third District<br>Docket No. 3-16-0323 |
| Filed | April 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 14-D-188; the Hon. Adrienne W. Albrecht, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Roy A. Sabuco, Zachary B. Pollack, and Kimberley M. Donald, of Sabuco, Beck, Hansen, Massino & Pollack, P.C., of Joliet, for appellants.<br><br>Christopher W. Bohlen, of Barmann, Bohlen & Jacobi, P.C., of Kankakee, for appellee. |

Panel            PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Lytton and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1      The respondents, Thomas Kasher, guardian of the estate of Virginia Faletti, and Teresa Convery, guardian of the person of Virginia Faletti, appeal from the circuit court's denial of their motion to vacate the bifurcated judgment of dissolution of marriage. The respondents argue that the circuit court abused its discretion when it entered the bifurcated judgment of dissolution of marriage without jurisdiction, consent, or notice.

¶ 2                               FACTS

¶ 3      On June 3, 2014, the petitioner, Dominic J. Faletti, Jr., guardian of the estate and person of Dominic J. Faletti, Sr., filed a petition for dissolution of the marriage of Dominic J. Faletti, Sr., and Virginia Faletti. Dominic and Virginia were married on April 9, 1975. Dominic and Virginia had no marital children. The petition alleged that Virginia had been guilty of extreme and repeated mental cruelty toward Dominic, irreconcilable differences had caused an irretrievable breakdown of the marriage, and all efforts at reconciliation had failed.

¶ 4      On June 24, 2014, the case was called for a hearing on the grounds for dissolution. Dominic J. Faletti, Jr. testified that reconciliation was no longer possible and Virginia indicated that she no longer wanted to maintain the marriage. The court found that irreconcilable differences had caused an irretrievable breakdown in the marriage of Dominic and Virginia, who had lived apart for six months. The parties indicated that they intended to file affidavits waiving the remainder of the two-year separation period.

¶ 5      On September 12, 2014, counsel for the petitioner, Christopher Bohlen, filed a motion for entry of judgment of dissolution of marriage. The motion alleged that Dominic resided in a skilled care facility, had no access to marital funds, and needed to apply for Medicaid. The motion attested "[s]o long as [Dominic] is married, he is unable to apply for Medicaid, as the assets belonging to both the husband and the wife would be applicable to defray any costs." In a subsequent emergency motion for temporary maintenance, the petitioner alleged that Virginia had evicted Dominic from the marital home, and Virginia exercised total control over the financial assets of the parties. Thereafter, the respondents filed an emergency motion for temporary maintenance, alleging that Virginia also resided in a skilled care facility and lacked sufficient funds to pay for her housing and care.

¶ 6      On October 8, 2014, the case was called for status of discovery and presentation of the judgment of dissolution. In open court, Bohlen tendered to Kimberley Donald, counsel for the respondents, a proposed judgment of dissolution. Donald responded "I'm not giving the authority at this time. I need time to review it, and then I will give you *** the authority." Bohlen requested a short continuance noting "[t]here's some urgency from the standpoint of, uh, nursing home payments and so forth." The court continued the case for status of discovery and presentation of judgment of dissolution.

¶ 7    At the October 24, 2014, hearing, Bohlen said that he had filed a motion for temporary maintenance because he

> "thought that there was going to be a judgment of dissolution entered. In that event, we weren't seeking temporary maintenance—because he would then become, based upon the information we had, eligible for Medicaid assistance.
>
> In light of the fact, then, that there was the—After the fact, it was determined there was an objection to the entry of the judgment of dissolution. Bifurcated."

Bohlen further stated that in 2013 Virginia received a $1,066,000 medical malpractice settlement. Bohlen alleged that the respondents had not disclosed the location of these funds in their discovery. Donald explained that the money was no longer in the respondents' control as it had been placed in a revocable trust for the benefit of Virginia's biological children. Donald thought that Virginia no longer had the capacity to revoke the trust. Due to concerns regarding Virginia's mental acuity, Donald was pursuing guardianship proceedings on behalf of Virginia. The court ordered the trustee and trust drafting attorney to appear at the next hearing and continued the case.

¶ 8    At the December 16, 2014, hearing, Bohlen said that the respondents had provided vague and insufficient responses to his interrogatories. Attorney Roy Sabuco, who had entered his appearance as cocounsel for the respondents, argued that a decline in Virginia's cognitive functioning had rendered her incapable of reasonably responding to the discovery requests. Sabuco said that they had not yet initiated guardianship proceedings for Virginia because her cognitive function only recently exhibited a rapid decline. Sabuco also noted that the respondents had not received an accounting from the petitioners of the funds held in the parties' joint account. Toward the end of the hearing, Bohlen requested the entry of a bifurcated judgment of dissolution of marriage. Sabuco responded:

> "[W]e don't have any objection philosophically with the entry of that judgment; but I—I think that for the same reasons that we're having difficulty with the discovery we need the guardian to make that decision. I can represent to the Court that once a guardian is appointed that—that the guardian will—will agree to the entry of the judgment. But I—you know, I don't think we're—our client is competent to make that decision on her own at this point."

The court continued the case for entry of judgment order.

¶ 9    On January 5, 2015, the case was called for presentation of the judgment order. Donald said that Bohlen had "an order that we are not quite ready to present." Bohlen responded:

> "[W]ell, that would be an editorial we. [Bohlen] is ready. This was the judgment order that Sabuco had indicated that he was okay with, but wanted to make sure that the guardianship for—I understand the guardianship has been filed."

Bohlen asked the court to enter the judgment. Donald opposed the order, noting that Virginia was "not competent" and a guardian had not been appointed by the probate court. The case was continued for status on the appointment of a guardian for Virginia.

¶ 10    On January 9, 2015, Donald reported that guardianship proceedings had not been completed in the probate court. The case was continued and eventually set for status on February 3, 2015. However, the January 23, 2015, docket entry states "judgment for dissolution of marriage presented, signed and ordered filed." The entry does not mention whether the order was entered in open court or if either party was present. The written

judgment of dissolution of marriage, which was filed on the same date, stated "[t]he parties have agreed to bifurcate the issues of grounds for the dissolution of marriage, and all remaining issues, including property, maintenance, and division and allocation of debt, have not yet been resolved and are reserved."

¶ 11    On February 20, 2015, the respondents filed a motion to vacate the judgment of dissolution of marriage. The motion attested that the judgment was inadvertently entered and Teresa Convery, as guardian of Virginia's person, did not consent to the entry of the judgment as it "would not have been her mother's wish." In response, the petitioner said that he had "no way of knowing whether the guardian of the person did or did not consent to the judgment order, however, her attorneys did consent to the judgment order prior to the time of its entry."

¶ 12    On May 9, 2016, the court heard the respondents' motion. Sabuco argued that, at the conclusion of the January 9, 2015, hearing, the case was continued to February 3, 2015, for status on the entry of the judgment. On January 21, 2015, the probate court granted the petition for guardianship and appointed guardians of the person and estate of Virginia. The guardianship order was entered on January 23, 2015. On the same date, Bohlen presented the judgment of dissolution of marriage to the court while the respondents were not present. Sabuco argued that the case was set for presentation of the judgment on February 3, 2015, and the respondents received no notice of the January 23, 2015, entry of the bifurcated judgment of dissolution of marriage. Sabuco contended that Convery told the respondents' attorneys that Virginia did not want the dissolution because of her strong Catholic background. As a result, Sabuco and Donald intended to object to the entry of the judgment at the February 3, 2015, hearing.

¶ 13    In its ruling, the court noted that the case was filed on June 3, 2014. Shortly thereafter, the parties conducted a grounds for divorce hearing and neither party objected to the grounds heard. The court found:

"[O]n December 16th, this Court—in conversation with Counsel, with everyone there, said, Judge, we just need to enter a guardianship and then we'll enter the judgment order. That was represented by Counsel.

Then after that—and—and then, the Court was astounded because both counsels stood there, after this case had been pending for six months and said, Judge, we don't think our client is competent, we think we need a guardianship, after the case had been pending and these attorneys had been representing this person.

So then they filed the guardianship, and the Court gave them an opportunity to do that and time to do that repeatedly. The Court kept resetting this for entry of a judgment order because that's what the attorneys had indicated to the Court was going to happen.

This is not a matter of somebody running in and sneaking in. This is a matter of the Court saying, Okay, where's the order of guardianship, where's the judgment order, because that's where this Court was going.

Because, honestly, this is a dispute not between the parents and the—this is a—this is—this is an effort on the part of the adult children to get an advantage with regards to whatever estate—which the Court wasn't allowed to find out what it amounted to because they're—the—of the intransigence of the children of Virginia.

So then the order gets signed. All this Court understood from the attorneys that it was waiting for was an order of guardianship. And because the grounds had already"

been heard, the case had already been filed without any objection, that's all this Court was waiting for.

Both parties were in fragile health. The—both parties were—were in nursing homes. The Court understood that at the time. Both parties were not managing their own finances. Their adult children were. So the fault in this case does not fly with either Mr. Faletti or Mrs. Faletti. It lies within their adult children.

And to refuse to enter the order and to vacate the order would, in this Court's opinion, validate all of the efforts at obfuscation and delay on the part of Virginia's children because that's what happened in this case.

It's a straightforward, simple case. There was a grounds hearing, it was not contested, and the parties agreed that they would enter an order, and then we have—and in the meantime, we have delay. And the delay is caused entirely by Virginia Faletti's children.

Therefore, because there was nothing done untoward—the transcripts are clear. At every stage, the Court is saying, Where's the order, where's the order, where's the order? The order was handed up. There was no objection to it. We were simply waiting for the guardianship. That's the Court's understanding, that's Mr. Bohlen's understanding, and that's the impression that was given to this Court by the attorneys for Virginia Faletti.

So for those reasons, the motion to vacate will be denied."

¶ 14    The respondents appeal from the court's denial of their motion to vacate the judgment of dissolution.

¶ 15                                                ANALYSIS

¶ 16    The respondents argue that the denial of their motion to vacate the bifurcated judgment of dissolution of marriage was the result of an abuse of discretion because neither Virginia nor her guardians consented to the entry of the judgment.

¶ 17    Section 2-1203(a) of the Code of Civil Procedure permits a party to move to vacate a civil judgment 30 days after its entry. 735 ILCS 5/2-1203(a) (West 2014). We review the court's denial of a motion to determine if the court abused its discretion and did substantial justice between the parties. *In re Marriage of Sutherland*, 251 Ill. App. 3d 411, 414 (1993).

¶ 18    Under the Illinois Marriage and Dissolution of Marriage Act, a court may enter a judgment of dissolution of marriage where

"the spouses have lived separate and apart for a continuous period in excess of 2 years and irreconcilable differences have caused the irretrievable breakdown of the marriage and the court determines that efforts at reconciliation have failed or that future attempts at reconciliation would be impracticable and not in the best interests of the family." 750 ILCS 5/401(a)(2) (West 2014).

The spouses may waive the two years separation period if they have lived separate and apart for a continuous period of at least six months and they file a written waiver with the court. *Id.* The court shall not enter judgment unless it has jurisdiction and it considered, approved, or reserved ruling on issues related to child custody and support, spousal support, and property disposition. 750 ILCS 5/401(b) (West 2014). Where the court reserves any of these issues, it

may enter a bifurcated judgment "either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances exist." *Id.*

¶ 19 The judgment and the court's oral ruling on the respondents' motion to vacate the dissolution establish that the court thought that the parties had consented to the entry of a bifurcated judgment of dissolution of marriage prior to the entry of the order on January 23, 2015. The court believed that, as there was no objection to the bifurcated judgment from the attorneys, it was "simply waiting for the guardianship." However, the record does not support the court's ruling as the respondents' attorneys had not consented to the entry of the judgment and had expressly reserved the decision on whether to consent to the order for the appointed guardian.

¶ 20 Throughout the record, counsel for the respondents withheld consent to the entry of the judgment. On October 8, 2014, Donald stated that she was not giving Bohlen permission to enter the dissolution as she needed time to review it. On October 24, 2014, Bohlen recognized that, at the prior hearing, "it was determined there was an objection to the entry of the judgment of dissolution." Then, on December 16, 2014, Sabuco said "*we don't have any objection philosophically with the entry of that judgment; but *** we need the guardian to make that decision.*" (Emphases added.)

¶ 21 The distinction between "not objecting" and "consenting to" the entry of the judgment is paramount to our review of the court's ruling. The court could only enter a bifurcated judgment if the parties consented to it or the court made a finding that appropriate circumstances existed. *Id.* The second clause is not at issue as there is no indication that the court made a finding that "appropriate circumstances" required entry of the bifurcated judgment. *Id.* Instead the court found "the parties agreed that they would enter an order." Thus, we must determine if the record establishes that the respondents consented to the entry of the bifurcated judgment.

¶ 22 "Giving consent and offering no objection are different acts." *Mulcahey v. Vehon*, 229 Ill. App. 454, 471 (1923). A party who does not object to a proceeding assumes a passive position. *Id.* He is neither agreeing to the proposal nor opposing it. *Id.* In contrast, by providing consent, a party assumes an active position in furtherance of the proposal. *Id.*

¶ 23 From our review of the record, there is no indication that the respondents consented to the entry of the bifurcated judgment. Specifically, Sabuco expressly reserved the respondents' decision on whether to consent to the judgment for Virginia's appointed guardian. Consistent with Sabuco's statement, at the January 5, 2015, hearing, Donald reiterated that the respondents were not yet ready to consent to the entry of the judgment as the guardianship proceedings had not been resolved. On January 9, 2015, Donald reported that the guardianship proceedings were still in progress and the case was continued to February 3, 2015, for status on the entry of the judgment. Bohlen circumvented the February 3, 2015, status date by filing the bifurcated judgment, which the respondents had consistently withheld consent to, on January 23, 2015. The guardians of Virginia's estate and person were appointed on the same date, and there is no indication in the record that either of Virginia's guardians appeared in court on January 23, 2015, to expressly consent to the entry of the judgment. Therefore, the record establishes that the judgment was entered without the respondents' consent, and the court abused its discretion and duty to do substantial justice between the parties when it denied the respondents' motion to vacate the judgment.

¶ 24 In his appellee's brief, the petitioner argues that Sabuco had consented to the entry of the judgment on behalf of the guardian when he stated "I can represent to the Court that once a

- 6 -

guardian is appointed, that—that the guardian will—will agree to the entry of the judgment." This interpretation of Sabuco's statement is entirely inconsistent with the purpose of appointing a guardian and impermissibly infringes on the statutory obligations of the guardian.

During the pendency of this case, Sabuco and Donald initiated guardianship proceedings after observing that Virginia's mental acuity had rapidly declined. While these proceedings slowed the progress of the underlying divorce case, Sabuco and Donald had a professional obligation to initiate the guardianship proceedings after they observed Virginia's cognitive decline. Ill. R. Prof'l Conduct (2010) R. 1.14(b) (eff. Jan. 1, 2010). Once appointed, the guardian of Virginia's person was empowered to "make provisions] for [Virginia's] support, care, comfort, health, education and maintenance." 755 ILCS 5/11a-17(a) (West 2014). Such decisions were to be made consistent with Virginia's "personal, philosophical, religious and moral beliefs, and ethical values." 755 ILCS 5/11a-17(e) (West 2014).

The motion to vacate and Sabuco's argument at the hearing on the motion establish that Convery, as guardian of Virginia's person, sought to exercise her power to make provisions for Virginia that were consistent with Virginia's personal and religious beliefs. 755 ILCS 5/11a-17(a), (e) (West 2014). Specifically, Convery told the attorneys that Virginia would not want a divorce because of her strong Catholic beliefs. Additionally, Convery felt that the dissolution "would not have been her mother's wish." These representations establish that Convery did not intend to consent to the entry of the bifurcated judgment of dissolution. Instead, Convery reasonably intended to exercise her statutory duties, at the February 3, 2015, hearing, to oppose the entry of the bifurcated judgment of dissolution of marriage. *Id.* To interpret Sabuco's prospective statement that the guardian "will agree to the entry of the judgment" as binding on the later-appointed guardian would render the guardianship proceedings a mere formality. Such a result is entirely inconsistent with the statutory role of a guardian of the person. See 755 ILCS 5/11a-17 (West 2014). We conclude that Sabuco's representation that the guardian would consent to the entry of the judgment did not bind the guardian and was not prospective consent.

¶ 27                                             CONCLUSION

¶ 28      The judgment of the circuit court of Kankakee County is reversed. The cause is remanded with directions to vacate the bifurcated judgment of dissolution of marriage and conduct any further proceedings. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994) ("In all appeals the reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require.").

¶ 29      Reversed and remanded with directions.

- 7 -